**UNITED STATES of America**

v.

**Michael G. THEVIS et al.**

**Crim. A. No. CR78–180A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 3, 1979.

See also, D.C., 84 F.R.D. 57.

Bobby Lee Cook, Cook & Palmour, Summerville, Ga. (on motions), for Thevis.

Edward T. M. Garland, Garland, Nuckolls & Kadish, Atlanta, Ga., Joseph Beeler, Miami, Fla., for Global and Fidelity on motions.

Austin E. Catts, Atlanta, Ga., for Evans on motions.

Hylton B. Dupree, Jr., Dupree & Staples, Marietta, Ga., for Mahar on motions.

B. Dean Grindle, Jr., Atlanta, Ga., for Hood on motions.

HAROLD L. MURPHY, District Judge.

This order arises from the submission of defense motions for pretrial discovery pursuant to Rule 16, F.R.Cr.P., and the consti-

tutional mandate of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962).[1]

The indictment in this case alleges that ten different crimes were committed over a ten year period beginning in 1968. ` Four conspiracies are alleged, as well as six substantive violations. Six defendants are charged, four of whom are individuals, the remaining two corporations.[2]

The investigation of the affairs of defendant Thevis, his companies, and associates has been massive. In an *in camera* hearing, representatives of the F.B.I. estimated that their investigation *alone* had assembled approximately thirty thousand documents. Not unsurprisingly, the defendants believe that at least some of these materials would be discoverable under Rule 16 or as exculpatory information under the *Brady* doctrine. While the government acknowledges its obligations under Rule 16 and *Brady,* it disputes the timing of the allowed discovery and the extent to which the requested discovery would infringe on its ongoing investigation and case preparation.

I •

The following timetable will control requests for disclosure of discoverable materials under Rule 16 or the constitutional imperative of *Brady* and its progeny:

(1) Requests for Rule 16(a)(1)(A) and Rule 16(a)(1)(B) shall be disclosed to the defendants as soon as reasonably possible.

(2) Specific requests for Rule 16(a)(1)(C) or Rule 16(a)(1)(D) materials which also contain *Brady* materials shall be disclosed to the defendants as soon as reasonably possible.

(3) General or non-*Brady* specific requests for Rule 16(a)(1)(C) or Rule

16(a)(1)(D) shall be disclosed to the defendants after the defendants make a prima facie showing of materiality.

(4) Requests for exculpatory *Brady* materials shall be disclosed to the defendants prior to July 20, 1979, or if the materials are discovered by the government after that date, as soon thereafter as reasonably possible.

(5) Requests for *Brady* materials useful for impeachment shall be disclosed prior to August 1, 1979 or as soon thereafter as discovered for those government witnesses who have already been identified in the record of this proceeding and for those govern witnesses who are currently under government protection.

(6) Requests for *Brady* materials useful for impeachment for all other witnesses shall be disclosed seven days prior to the expected direct testimony of the government witness.

In Part II of this order, the Court will set forth its reasoning which underlies the disclosure timetable set forth *supra,* and in Part III, the Court will analyze the generic requests for discovery.

II

Resolution of the issues presented by the discovery motions requires consideration of three distinct mandates: Rule 16, *Brady* and its progeny, and the Jencks Act, 18 U.S.C. § 3500. Not only the scope of disclosure, but the timing of the allowed discovery turns on the interplay of *Brady's* constitutional command upon the statutory mandates of Rule 16 and the Jencks Act.

▮ Pretrial discovery must begin with Rule 16, and at the outset, it must be recognized that the discovery under Rule 16(a)(1)(A) and (B) is mandatory, 8 *Moore's Federal Practice* ¶ 16.30, and absent a

---

1. This order is in response to the following motions: Motion for Discovery and Inspection (defendants Fidelity Leasing Corp., Inc. and Global Industries, Inc.); Motion for Discovery and Production (defendant Michael G. Thevis); Motion for Disclosure of Impeaching Information (defendants Fidelity and Global); Motion for Exculpatory Evidence (defendant Anna

Jeanette Evans); Motion for Pre-Trial *Brady* Disclosure Timetable (Fidelity and Global).

2. Defendant William Ross Mahar has died since the return of the indictment, and jurisdiction over that defendant is now vested in a higher authority than this Court.

government motion for a protective order, see, Rule 16(d)(1), it must be allowed as soon as reasonably possible.

██ Discovery under Rule 16(a)(1)(C) or (D) is dependent on a showing by the defendant that it is "material to the preparation of his defense . . . ."[3] In order to obtain discovery under these provisions, it is necessary that the defendant make a *prima facie* showing of materiality. *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir. 1979); *United States v. Johnson,* 577 F.2d 1304 (5th Cir. 1978). "Materiality," as defined by this Circuit means,

> more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor. *United States v. Ross,* 511 F.2d 757, 762–763 (5th Cir. 1975), *cert. denied* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975), quoted in *Buckley, supra* at 506.

While the "materiality" standard as enunciated in *Johnson, supra,* might conflict with the more liberal discovery practices recognized by both court and commentator, its practical effect is seriously undercut by the constitutional mandate of *Brady v. Maryland, supra.*

██ Before considering that mandate, suffice it to state that in the absence of *Brady* considerations, discovery under Rule 16(a)(1)(C) or (D) shall be allowed as soon as reasonably possible after the defense makes a *prima facie* showing of materiality. This showing may be had made by affidavit, counsel's statement in his place, or otherwise. By this, the Court does not mean to preclude formal evidentiary hearings to allow the defendant to carry his showing of materiality, but it does mean to obviate such hearings if the same record can be produced by less formal, more efficient, trustworthy means.

██ The constitutional command of *Brady* is that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment . . . ." *Brady, supra* 373 U.S. at 87, 83 S.Ct. at 1196–97. As interpreted by the Fifth Circuit, the *Brady* mandate also includes evidence important or useful for impeachment purposes. *Williams v. Dutton,* 400 F.2d 797 (5th Cir. 1968), *cert. denied* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1968); *United States v. Hildebrand,* 506 F.2d 406 (5th Cir. 1975), *cert. denied* 421 U.S. 968, 95 S.Ct. 1961, 44 L.Ed.2d 457 (1976).

██ While the fundamental basis for the disclosure required by *Brady* is that due process guaranteed by the Fifth Amendment, that same due process does not guarantee pretrial disclosure in every case. "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley,* 576 F.2d 626, 630 (5th Cir. 1978).

██ However, when a Rule 16 request seeks information which is within the ambit of both that statutory rule and the constitutional directive of *Brady* there can be no doubt but that the government must disclose the requested exculpatory material pursuant to the requirements of Rule 16, and, *a fortiori,* prior to trial.

Furthermore, the showing of materiality required under Rule 16(a)(1)(C) or (D) is affected when the information specifically requested under those subparagraphs is also *Brady* material. The standard adopted by this Circuit for analyzing possible reversible error for failure to disclose under Rule 16 was set forth in *United States v. Saitta,* 443 F.2d 830, 831 (5th Cir. 1971), *cert. denied* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971):

> . . . an error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant.

---

**3.** Although Rule 16(a)(1)(C) or (D) each have alternative grounds for discovery, presumably there would be no disputes as to these grounds

since the government knows the evidence that it will introduce in its case in chief and that which was seized from the defendant.

The standard for reviewing potential error in failing to disclose a specific *Brady* request is much lower: might the suppressed evidence have affected the outcome of the trial? *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975).

■■ Although the test for measuring materiality when a Rule 16(a)(1)(C) or (D) request specifically asks for *Brady* information must be derived inferentially by analyzing the different standards of review on appeal for specific *Brady* as opposed to that for non-*Brady* requests, it seems to this Court that the constitutional overlay of *Brady* upon a specific Rule 16(a)(1)(C) or (D) request reduces that showing to such a minimal level as to make it nonexistent. Accordingly, when a specific Rule 16(a)(1)(C) or (D) request identifies *Brady* material, that information shall be disclosed without a showing by the defense of materiality.

In essence, this holding as to Rule 16(a)(1)(C) or (D) is that *Brady* evidence identified by specific request is, by definition, material. On a spectrum, the showing of materiality would vary inversely with the degree to which the specifically requested material were actually *Brady.* Thus, if *Brady* material would specifically requested under Rule 16(a)(1)(C) or (D), no showing of materiality to the defense would be required. However, were the material requested "arguably *Brady*" some showing of materiality would be required though not the showing required if no *Brady* information were requested. This requirement also has the exemplary virtue of encouraging the prosecution to seek an *in camera* determination by the Court if the disclosure of materials specifically requested is in doubt.

■ A different result, however, is reached for general *Brady* requests under Rule 16(a)(1)(C) or (D). As the Supreme Court recognized in *Agurs,* that request is the same as no request at all. *Agurs, supra* at 106, 96 S.Ct. 2392. As the denial of a general *Brady* request carries with it a stricter standard of review[4] than that ac-corded a denial of a Rule 16 request or a specific, *Brady* request, this Court holds that no reduction in the showing of materiality is had under Rule 16(a)(1)(C) or (D) when the request generally seeks to elicit *Brady* information.

As to those requests which seek exculpatory *Brady* material outside the ambit of Rule 16, this Court recognizes the admonition of the Fifth Circuit Court of Appeals that *Brady* is not a discovery rule *per se.* See, *Beasley, supra* at 630. Nonetheless, this Court believes that due process requirements and the "rule of fairness and minimum prosecutorial obligation"[5] require the delivery of exculpatory material to the defense no later than July 20, 1979, or if the material is discovered by the government after that date, as soon after discovery as reasonably possible.

By exculpatory evidence, this Court means substantive evidence relating to a defendant's guilt or innocence or in mitigation of what otherwise would be guilty conduct.

Although the government has agreed to disclose this information prior to trial it is important to enunciate the rationale for this ruling. While *Brady* might not require pretrial disclosure in every case, its constitutional command cannot always be satisfied by disclosure at trial.

This Court recognizes the holdings of the Fifth Circuit that *Brady* requires disclosure "at the appropriate time," *Williams, supra* at 800, and furthermore, it is cognizant of those cases which have approved *Brady* disclosures at trial. *See, United States v. Anderson,* 574 F.2d 1347 (5th Cir. 1978), *United States v. Campagnuolo,* 592 F.2d 852 (5th Cir. 1979), nonetheless, this Court is convinced that the "rule of fairness and minimum prosecutorial obligation," *Beasley, supra* at 630, requires pretrial disclosure of *Brady* material when the material is such that it cannot be effectively used if disclosure is withheld until trial.

**4.** *Agurs,* supra at 112, 96 S.Ct. 2392.

**5.** *Beasley, supra* at 630.

The *Brady* materials in this case include F.B.I. "302" reports as well as other writings which summarize potentially exculpatory information. Independent investigation is the only effective method of utilizing this information, and independent investigation requires time. This Court agrees with the holding of the court in *United States v. Pollock,* 175 U.S.App.D.C. 227, 236, 534 F.2d 964, 973 (1976):

> Disclosure by the government must be made at such a time as to allow the defense to use favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure. [citations omitted] The trial judge must be given a wide measure of discretion to ensure satisfaction of this standard. While some courts have held that *Brady* affords no pre-trial discovery rights to defendants, see *United States v. Moore,* 439 F.2d 1107 (6th Cir. 1971); *United States v. Manhattan Brush Co.,* 38 F.R.D. 4 (S.D.N.Y.1965), we believe that application of a strict rule would inevitably produce some situations in which late disclosure would emasculate the effects of *Brady* . . . .

This Court believes that this case is such that at trial disclosure of *Brady* material is tantamount to the actual suppression of the material, and this ruling is an exercise of its discretion to obviate this constitutional deprivation.

As to that *Brady* material which is useful for impeachment but which does not provide exculpatory evidence, the government opposes disclosure until the night preceding the witness' expected testimony. Two arguments are advanced in support of this position: (1) witness safety and security; and (2) the Jencks Act, 18 U.S.C. § 3500, controls disclosure of *Brady* materials contained within government witness' statements, and that act prevents disclosure until after the witness has testified on direct.[6]

The Court is cognizant of and, indeed, it shares the government's concern for the safety, security, and welfare of the government witnesses.

Presently before the Court is a defense motion to require disclosure of government witnesses, and until that motion is formally considered on its merits, this Court has no intention of compromising the security of those witnesses in a backhand manner by requiring the disclosure of *Brady* materials useful for impeachment which might also identify and locate witnesses who are, at present, unknown.

However, the Court is concerned and convinced that the volume of *Brady* material useful for impeachment could not properly be digested and used effectively if disclosure of this material were withheld until the night preceding the witness' expected direct examination.

As to those witnesses who have already been disclosed in the record of this proceeding and to those witnesses who are currently under the government's protection, security is not at issue since the witnesses have either been identified and are known to the defendants or the individuals are the beneficiaries of government protection. *Brady* information useful for impeachment purposes which does not disclose the current location of those witnesses must be disclosed to the defendants by August 1, 1979 in order to allow the defense an opportunity to digest, collate, and effectively utilize the afforded *Brady* materials.[7]

Similarly, for all other witnesses, the Court will require that *Brady* information useful for impeachment be disclosed to the defense, expunged of any information

---

**6.** The government may waive strict compliance with the act. *United States v. Murphy,* 569 F.2d 771 (3d Cir. 1978), *cert. denied* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978).

**7.** The date of August 1, 1979 was not chosen at random. The government has previously offered to disclose all *Brady* materials used for impeachment of the testimony of Roger D. Underhill three weeks prior to trial. The Court believes that three weeks is a reasonable time to effectively utilize this material, and it has adopted that pretrial disclosure time for all *Brady* material useful for impeachment for witnesses whose security is not in jeopardy.

from which the current location of the witnesses may be discerned, no later than seven days prior to the anticipated testimony of the witness. While this information will, to a certain extent, disclose the direction of the government's case and the identity of those witnesses, this pretrial discovery of *Brady* impeaching materials is necessary to protect the constitutional rights of the defendants.

 Based on the record before it, this Court finds that delayed disclosure of the *Brady* materials useful for impeachment until the night preceding testimony would be insufficient to protect the constitutional rights of the defendants. Furthermore, the delays that such a procedure would entail to allow the defense a sufficient opportunity to effectively utilize the *Brady* materials would not be the most efficient use of the Court's time or in furtherance of judicial economy. Finally, the Court finds that disclosure of the *Brady* material useful for impeachment will compromise the security of the government's witnesses. However, the interval between disclosure and testimony at trial is relatively limited, and the government will not be unduly burdened to extend protection to the disclosed witnesses if, in its discretion, it deems it necessary.

Additionally, the government insists that disclosure of *Brady* material contained in Jencks Act material may not be compelled except in accordance with that act.[8]

As the government brief notes, there is much case law within this circuit in support of their argument. However, there are two strains of authority within this circuit, and these divergent views were compared in *United States v. Campagnuolo,* supra at 860:

> Our prior cases might be read as holding that *Brady* and the timing provisions of the Jencks Act are compatible as a matter of law. Alternatively, they might hold that *Brady* would override the Jencks Act in cases where lack of pretrial discovery resulted in prejudice to the defendant 'of substantial Due Process character.' [citations omitted][9]

The Court in that decision did not resolve the conflict, holding that in that case there had been no prejudice to the defendant from the alleged tardy disclosure of the Jencks Act material.

██ In the face of this conflict, this Court believes that the better rule requires the pretrial disclosure of *Brady* material in accordance with the timetable set forth in this order even though that material is part of a Jencks Act statement.

The language of the statute must submit to the constitutional mandate of *Brady,* and this Court finds that rights of the defendant of "a substantial Due Process character", *United States v. Harris, supra* at 677 will be vitiated if disclosure is not had until the night preceding trial.

While the trial could be interrupted to afford the defendant an opportunity to evaluate the material after the direct examination, the continued interruption of the trial for defense delays would certainly create some prejudice against the defendant in the eyes of the jury. Furthermore, these delays would not be in the best interests of judicial economy and convenience.

### III

The Court has reviewed the individual requests for discovery, and the government's general response thereto. In all candor, the Court is simply overwhelmed by the volume of material assembled by the government, and it has neither the resources nor the time to review individually the documents which might be either Rule 16 or *Brady* material. To that extent, this order is self-executing in that the Court has

---

8. Succinctly stated, the act provides that pretrial statements of government witnesses shall not be subject to disclosure until after the witness has testified on direct. 18 U.S.C. § 3500(a).

9. *Compare, United States v. Dotson,* 546 F.2d 1151 (5th Cir. 1977) with *United States v. Harris,* 458 F.2d 670 (5th Cir. 1972), *cert. denied* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972).

detailed a procedure for disclosing the materials which are under either category, and it is the responsibility of the defendants to assert "materiality" under Rule 16(a)(1)(C) or (D) and the responsibility of the government to disclose all Rule 16(a)(1)(A) or (B) and all *Brady* material or, at the least, entrust the arguably *Brady* material with the Court for an *in camera* determination.

As there is apparently some disagreement about the scope of Rule 16(a)(1)(A), this Court holds that rule encompasses statements of the defendant whether made directly to a government agent or to a third party who then makes a statement to the government in which the defendant's remarks are attributed and included in the third party's statement. Furthermore, this Court holds that statements of coconspirators concerning activity or participation in one of the four alleged conspiracies shall be disclosed under Rule 16(a)(1)(A). The Court will analyze its rationale for each holding seriatim.

The government contends that the Jencks Act, 18 U.S.C. § 3500, prohibits pretrial disclosure of defendant statements to a third party which are attributed to the defendant and included in a statement of a prospective government witness. There is case authority for this position. *United States v. Feinberg*, 502 F.2d 1180 (7 Cir. 1974); *cert. denied* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *United States v. Wilkerson*, 456 F.2d 57 (6th Cir. 1972), *cert. denied* 408 U.S. 926, 92 S.Ct. 2506, 33 L.Ed.2d 337 (1972); *United States v. Walk*, 533 F.2d 417 (9th Cir. 1975).[10]

However, it is the view of this Court that those decisions are based on a myopic interpretation of Rule 16.

Rule 16(a)(1)(A) states that "the government shall permit the defendant to inspect . . . any relevant written or recorded statements made by the defendant . . ." That disclosure rule is subject to the caveat contained in Rule 16(a) that "except as authorized in [Rule 16(a)(1)] (A) . . .

this rule does not authorize discovery . . . of statements made by government witnesses or prospective government witnesses except as provided by 18 U.S.C. § 3500." However, under Rule 16(a)(2), the prophylactic effect of the Jencks Act is not to prohibit disclosures of statements made by the defendant, a disclosure authorized by Rule 16(a)(1)(A). Since "statements made by the defendant" is not limited to statements made first hand by the defendant to the government, it follows that statements made by the defendant to a third party is excepted from the anti-disclosure protection of the Jencks Act by Rule 16(a)(2). However, the prohibitions of Rule 16(a)(2) apply, and it is only the statement of the defendant which is discoverable not the entire statement of the prospective government witness.

The statement of the defendant remains his statement, regardless of who reports, witnesses, or memorializes it. *See, United States v. Feinberg*, 371 F.Supp. 1205, 1212 (N.D.Ill.1974), *rev'd in part United States v. Feinberg, supra*. It does not become the statement of a prospective government witness, solely because that witness reports the defendant's statement and attributes it to him.

The policy underlying Rule 16(a)(1)(A) is advanced by such an interpretation as well. As the Advisory Committee noted:

> The amendment making disclosure mandatory under the circumstances prescribed in subdivision (a)(1)(A) resolves such ambiguity as may currently exist, in the direction of more liberal discovery. [citations omitted] This is done in the view that broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue

10. None of these cases construed the 1975 Amendment to Rule 16 which is presently before this Court.

of guilt or innocence. This is the ground upon which the American Bar Association Standards Relating to Discovery and Procedure Before Trial (Approved Draft, 1970) has unanimously recommended broader discovery. The United States Supreme Court has said that the pretrial disclosure of a defendant's statements "may be the 'better practice.'" *Cicenia v. La Gay,* 357 U.S. 504, 511, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958).

Furthermore, as other jurists have recognized, "a defendant will be less likely to recall the substance of a spontaneous or informal statement than one formally made after solemn contemplation in the presence of governmental authorities. Hence the defendant's need for pretrial disclosure of his statement—which presumably can be used against him at his trial with equal force as formal statement—is potentially the greater." *United States v. Walk, supra* at 425 (J. Koelsch dissenting).

Finally this Court notes that in 1975, Rule 16 was amended. Prior to amendment, the Rule only excepts what is currently Rule 16(a)(1)(D) (scientific tests, etc.) from the anti-disclosure provisions of the Jencks Act.[11] In 1975, that rule was amended and expanded with the result that statements of the defendant were to be excepted from the provisions of the Jencks Act. The inescapable conclusion to this Court is that through that amendment the Congress expressed its intent that the prohibitions against disclosure contained in the Jencks Act were not to be utilized to preclude disclosure of statements attributable to the defendant even though defendant statements were included in the statements of government or prospective government witnesses.

■ Secondly, this Court holds that statements of coconspirators which concern activities conducted or statements made during the course of and in furtherance of the conspiracy in which the declarant and the defendant were both members must be disclosed to the defendant under Rule 16(a)(1)(A).

Under Rule 801(d)(2)(E), F.R.E., statements of coconspirators are not inadmissible as hearsay when made during the course of and in furtherance of a conspiracy of which both the declarant and the defendant are members. *United States v. James,* 590 F.2d 575, 578 (5th Cir. 1979).

The theory underlying the coconspiracy rule is "the notion that conspirators are partners in crime. [citations omitted] As such, the law deems them agents of one another." *Anderson v. United States,* 417 U.S. 211, 218 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1973).

While this Court recognizes that the admissibility of a statement is entirely different from its discoverability, the theory underlying its admissibility is a highly persuasive argument for its discoverability.

■ Since the statement of a coconspirator, after the proper foundation is laid, is admissible against the defendant as if it were his own, this Court holds that the statements of coconspirators concerning activity conducted or statements made during the course of the conspiracy of which the declarant and the defendant were members shall be deemed to be statements of the defendant and discoverable under Rule 16(a)(1)(A). *See, United States v. Agnello,* 367 F.Supp. 444 (E.D.N.Y.1973). Since the coconspirators are deemed to be the agents of the defendant, their statements are attributed to the defendant when made in furtherance of the conspiracy of which they both were members, and the Jencks Act would not prevent disclosure. Rule 16(a)(2).

Admittedly, this construction of the phrase "statements made by the defendant" to include coconspirator's statements is an

11. Rule 16(b) provided in pertinent part: "Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except in 18 U.S.C. § 3500."

extremely broad interpretation, but the Court finds it consistent with the policy and goals underlying Rule 16 and within the recognized discretion of the trial court. *See, Agnello v. United States, supra*; *United States v. Brighton Building and Maintenance Co.,* 435 F.Supp. 222, 223 n. 20 (N.D. Ill.1977).

Those remaining requests for discovery information which seek discovery outside the scope of Rule 16 or *Brady* are denied at this time. Most of those requests seek discovery relating to alleged prosecutorial misconduct. In the absence of anything more concrete than mere allegations, this Court will deny those requests subject to renewal if more concrete and substantial charges are developed.

As to the question of informants and disclosure of the government's arrangement with its informants, the Court will take those requests under advisement.

Similarly, the Court will not rule at this time on the disclosure requests which go toward the grand jury transcripts and minutes, but it does direct that they be filed under seal with the Court.

As to those discovery requests which relate to Count X, the Court has reviewed *in camera* the ongoing investigation of the Underhill-Galanti slayings. Based on that review, the Court holds that no *Brady* material other than known unindicted suspects is currently in the possession of the government. While the Court notes that there are additional suspects to that crime, the disclosure of those suspects would, at this time, freeze the investigation, and would, at worst, preclude, or, at best, inhibit successful prosecution of the individuals suspected of participating in the conspiracy alleged in Count X. At this time, the Court will not order disclosure of those suspects.

The UNITED STATES of America