**UNITED STATES of America,
Appellant,**

v.

**Clarence Paul ROBERTS and Linwood
Lee Lloyd, Appellees.**

**No. 85–5122.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 13, 1985.

Decided June 16, 1986.

---

Murnaghan, Circuit Judge, filed a concurring opinion.

John F. DePue, Washington, D.C., (John Stuart Bruce, Asst. U.S. Atty., Samuel T. Currin, U.S. Atty., Raleigh, N.C. on brief), for appellant.

J. Randolph Ward, Durham, N.C., for appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

The issue is whether under Fed.R. Crim.P. 16(a)(1)(A) the Government may be compelled to disclose to a defendant before trial statements of co-conspirators that potentially are imputable to the defendant if admitted in evidence under the hearsay exception of Fed.R.Evid. 801(d)(2)(E). The Government, appealing from a suppression order entered when it declined to obey an order to disclose such statements, contends that such discovery is not authorized by the controlling rules, and therefore seeks reversal of the suppression and disclosure orders.

We hold that disclosure of co-conspirator statements may be ordered in appropriate cases, and that on the record before the district court, that court did not err in ordering disclosure and imposing the suppression sanction here. We therefore affirm, and remand for further proceedings, but we do so without prejudice to the district court's power, if so disposed, to entertain and consider a motion by the Government to reconsider the suppression order

## I

This appeal arises from one of a series of three related indictments returned during 1984 and 1985 in the Eastern District of North Carolina, that charged one Douglas Freeman Ross and others, including the appellees Roberts and Lloyd, with various offenses centered upon or growing out of Ross' alleged masterminding and direction of illegal drug operations. The central offenses charged were those of Ross and others that directly related to importation and distribution of illegal drugs. The appellees here, Roberts and Lloyd, were only charged, in one of the indictments, with offenses related to Ross' efforts to conceal his illicit drug proceeds in buying two pieces of real estate. Specifically, appellee Roberts was charged, along with Ross as co-defendant and others not indicted, with conspiracy to obstruct justice by participating in sham real estate purchase transactions designed to conceal Ross' use of the illicit proceeds; both appellees Roberts and Lloyd were charged, along with Ross, with related substantive obstruction offenses; and both appellees Roberts and Lloyd were charged with making false statements to the grand jury in connection with its investigation of the real estate transactions.

Before return of the central indictment in which Roberts and Lloyd were charged along with Ross and others, the Government moved that it be filed under seal, citing "witness security problems." The district court granted the motion.

After all the indictments had been filed, the Government moved to consolidate the three for trial on the basis of their interrelatedness. Before this motion was ruled upon, Ross became a fugitive, and the motion was withdrawn.

After Roberts and Lloyd entered pleas of not guilty to the charges against them, they filed motions for discovery pursuant to Fed.R.Crim.P. 16(a). As relevant to this appeal, the motion sought on behalf of Roberts the statements of any co-defendants which might be imputed to Roberts "under the Government's conspiracy theory [particularly those of] Mr. Ross, with whom he is specifically accused of conspiring." The motion further explained that:

Mr. Roberts' request for statements of his Co-Defendants is based upon the right given the accused in Rule 16 to obtain his own statements, and the underlying purpose of that provision. Where, as in this case, a conspiracy is alleged and the acts and statements of one defendant are sought to be imputed to another for the purpose of determining guilt, that purpose is served by disclosure of co-defendant's statements.

The Government filed a written opposition to the discovery motion arguing, inter alia, that Fed.R.Crim.P. 16(a)(1) did not embrace the statements of co-conspirators made during the course of the conspiracy. Appellees then filed a supplemental memorandum claiming that this court's recent decision in *United States v. Jackson*, 757 F.2d 1486 (4th Cir.1985), required the disclosure of "statements of co-defendants which might be imputed to the Defendant under the Government's conspiracy theory" when requested by the defense pursuant to Fed.R.Crim.P. 16.

A magistrate directed the government to make the disclosure requested. Upon appeal of the magistrate's order to the district judge, counsel for the government maintained that the magistrate's order was contrary to the plain language of Rule 16(a)(1)(A), contravened the intendment of the Jencks Act, 18 U.S.C. § 3500, and would as a practical matter, require the government to depose all of its witnesses prior to trial in order to create a record of the possible statements of co-conspirators. Addressing the precedential effect of *Jackson*, government counsel argued that, because of the ultimate disposition in that case, which affirmed the conviction on the basis that failure to disclose was harmless error, this court's statement in that decision that Fed.R.Crim.P. 16(a)(1)(A) required the submission of statements made by co-

conspirators to the defense was dicta that was not binding upon the district court.

On the authority of *Jackson*, the district court affirmed the magistrate's discovery order. Specifically to obtain immediate review of that order, Government counsel informed the court that the Government would not comply with the order and invited the imposition of sanctions, notwithstanding the court's expressed willingness to consider the government's contention that disclosure should not be ordered because of special circumstances involving witness security. The district court then entered an order that because of the government's refusal to comply, "all statements of co-defendants which might be imputed to the defendants under a conspiracy theory shall be suppressed at the defendants' upcoming trial." [1]

From that suppression order, the government appealed under 18 U.S.C. § 3731.

## II

We adhere to our ruling in *Jackson* on the point here in issue, and we take the opportunity presented by this appeal to elaborate to some extent upon the earlier ruling.[2]

We observe at the outset that the Government apparently takes the extreme position that under the controlling rules it may not be compelled under any circumstances to disclose before trial co-conspirator statements, whether or not the co-conspirators will testify as Government witnesses at trial.[3] In the Government's view, the only possible source for such discovery, Rule 16(a)(1)(A), does not affirmatively authorize it, and the Jencks Act, 18 U.S.C. § 3500, and its implementing rule, Fed.R. Crim.P. 26.2, flatly prohibit it.

Specifically, says the Government, Rule 16 provides the sole authority for compulsory pre-trial discovery, and in its most relevant provision, Rule 16(a)(1)(A), it literally authorizes discovery only of statements of a "defendant," not of "a defendant's co-conspirators."

Furthermore, the argument goes, the Jencks Act, allowing discovery of government witness statements only after the witness has testified on direct examination should properly be read to apply to co-conspirator statements embodied in Jencks Act statements of third-party government witnesses, thereby providing a further prohibition against the pre-trial discovery of such statements in that embodied form.

Though most courts that have considered the matter hold that the statements of co-conspirators who are "prospective government witnesses" are not discoverable before trial because of the Jencks

---

1. Though the motion to disclose was made by Roberts alone, the court's suppression order in terms runs to the possible benefit of both Roberts and Lloyd. Both are formal appellees on this appeal and a joint brief was filed for them.

2. The *Jackson* decision was by a divided panel whose two majority members are also members of this panel. In view of our disposition of this appeal, it is not necessary to address the general question raised by the Government of whether any substantive appellate ruling that trial court error has been committed is automatically made dicta by a further ruling that the error was harmless. Be that as it may, it suffices here that whether by a process of re-examination of dicta or reaffirmation of a holding, we adhere to the basic substantive ruling in *Jackson* on the point here in issue.

It may not be amiss, however, to concede that, even if not technically dicta, the majority opinion in *Jackson* (written by the same author) suffers some of the very imprecisions which rightly make true dicta not binding authority. That is undoubtedly a hazard generally to be kept in mind whenever courts write substantively to find error which is then declared harmless. It induces us here to give fuller treatment to an issue which clearly received too short shrift in *Jackson*.

3. This is clearly the Government's main position. In a prudential fall-back position, the Government also contends that *Jackson* is in any event distinguishable because of the different level of witness security risks involved in the two cases.

But this cannot serve to distinguish the cases. In neither case, for different reasons, were the specific security risks put directly in issue.

Accordingly, we address only the principal issue raised by the Government, whether pre-trial disclosure of co-conspirator statements may ever be compelled at peril of suppression or other sanctions.

Act,[4] they are in general agreement that under the relevant rules, the statements of co-conspirators not intended to be government witnesses should be discoverable under Rule 16(a)(1)(A) as imputable statements of defendants.[5] We are persuaded by the reasoning of those courts which hold that given the imputation of co-conspirator hearsay statements to defendants by the agency fiction of Fed.R.Evid. 801(d)(2)(E), a traditional *in pari materia* construction of the two rules requires reading Rule 16(a)(1)(A)'s reference to "statements by the defendant" to include any statements made by co-conspirators that have the potential for being treated as evidentiary admissions of the defendant under Rule 801(d)(2)(E).

This is more than a matter of mere tit-for-tat logic. If there were only that, we should be constrained by the powerful principle that it is not our function to re-write plain legislation to make it more logical, or fit, or fair.

Here, however, there is sufficient textual and practical interrelation between Fed.R.Crim.P. 16(a)(1)(A) and Fed.R.Evid. 801(d)(2)(E) that an attempt to harmonize them by construing them *in pari materia* seems to us warranted.

On that basis, we think that construing Rule 16(a)(1)(A) to reach imputable Rule 801(d)(2)(E) co-conspirator statements as a special case of discoverable "defendant's" statements furthers the legislative intent behind Rule 16, is a permissible construc-

tion of the literal text of that rule,[6] and simply has no effect upon the purely evidentiary operation of Rule 801(d)(2)(E). The intent behind Rule 16's original authorization of criminal discovery for defendants was to minimize the danger of *unfair* surprise (surprise with falsehood), to improve the fact-finding process, and to increase the opportunities for informed pleas. The progressive liberalization of the defendant-statement provisions of the rule, culminating in the present 1975 version of Rule 16(a)(1)(A), reflect the special concern felt for the danger of unfair surprise in that most devastating form of evidence in criminal prosecutions, inculpating admissions of the defendant. *See generally* Fed.R.Crim.P. 16(a) advisory committee note to 1975 amendments. That danger is no less real—indeed is even greater—with respect to imputable co-conspirator statements attributed to the co-conspirator in the trial testimony of others than it is with respect to statements attributed to the defendant himself in the testimony of others. For while a defendant's statement, as testified to by others, may only be false in attribution by the witness,[7] that of a co-conspirator may be false in either or both attribution and content. A defendant is therefore less threatened as a practical matter by non-disclosure before trial of his own statements than he is by non-disclosure of attributed co-conspirator statements that are treated by the law as his own.

4. See, e.g., *United States v. Percevault,* 490 F.2d 126, 131–32 (2d Cir.1974); *United States v. Fischbach & Moore, Inc.,* 576 F.Supp. 1384, 1390 (W.D.Pa.1983).

5. See, e.g., *United States v. McMillen,* 489 F.2d 229, 231 (7th Cir.1972) (distinguishing between prospective and nonprospective government witnesses); *United States v. Konefal,* 566 F.Supp. 698, 706 (N.D.N.Y.1983) (distinguishing *Percevault*'s denial of discovery on basis co-conspirator in instant case not a prospective government witness); *see also United States v. Thevis,* 84 F.R.D. 47, 56–57 (N.D.Ga.1979) (semble: discoverable whether or not co-conspirator scheduled as government witness); *see generally* 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 253, at 50 (1982); 8 Moore's *Fed-*

*eral Practice* ¶ 16.05[1], at 16–77 (1985) ("more widely accepted interpretation of R. 16(a)(1)(A)").

6. See *United States v. Thevis,* 84 F.R.D. at 56 (imputable statements of co-conspirators under Fed.R.Evid. 801(d)(2)(E) "deemed to be statements of the defendant ... under Rule 16(a)(1)(A)").

7. It is of course theoretically possible for a defendant's inculpating statement to have been "false," by his mistake or otherwise, hence subject, if known about, to possible "correction." This is so unlikely, however, that the only falsity likely to surprise a defendant in respect of his own statements is falsity of attribution to him, whether by design or mistake.

The possibility of false attribution to, or of false statements by, co-conspirators is of course not a fanciful one in the real life world of criminal conspiracy and of criminal prosecutions in the courts. *See Dennis v. United States,* 384 U.S. 855, 873, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966) ("inevitable risk of wrongful attribution of responsibility"); *see also United States v. Inadi,* — U.S. —, —, 106 S.Ct. 1121, 1133, 89 L.Ed.2d 390 (1986) (Marshall, J., dissenting) (noting danger of convictions on the basis of "boasts, faulty recollections, and coded or ambiguous utterances of outlaws").

The special danger of *unfair* surprise from undisclosed false, or falsely attributed, co-conspirator statements is now heightened by two related legal principles. The first is that, as a matter of national law, the government may now be able routinely to shield weak or vulnerable co-conspirators from cross-examination by introducing through others their statements inculpating the defendant; unavailability is not a constitutional or statutory condition to the admission of their hearsay statements under Fed.R.Evid. 801(d)(2)(E). *Inadi,* — U.S. —, 106 S.Ct. at 1121. If, in addition, defendants were also not allowed pre-trial discovery of the very existence of such statements, they may well be deprived even of the less valuable opportunity to subpoena the co-conspirator for the special "cross-examination" authorized by Fed.R. Evid. 806. *See Inadi,* — U.S. at —, 106 S.Ct. at 1127–28.

The second related principle, expressly applicable in some circuits and arguably in this one, is that co-conspirator statements are admissible under Rule 801(d)(2)(E) merely on a foundation showing that they were made "during the course and in furtherance of the conspiracy"; there is no requirement of any other "indicia of reliability." *See United States v. Lurz,* 666 F.2d 69, 80–81 (4th Cir.1981) (semble; no

indication whether co-conspirator also unavailable); *cf. United States v. Chindawongse,* 771 F.2d 840 (4th Cir.1985) (holding possibly dependent upon unavailability of co-conspirator; decided before *Inadi*); *see also Inadi,* — U.S. at — n. 1, 106 S.Ct. at 1129 n. 1 (Marshall, J., dissenting) (conflict within circuits noted).

In combination, if pre-trial discovery were never allowable, these related rules would permit the ready introduction of false or falsely attributed statements of co-conspirators of whose existence the defendant had no prior knowledge, thereby insuring no opportunity to impeach or counter except by a continuance obtained in mid-trial.

To suggest this is of course not to intimate that the Government would knowingly introduce either perjured or innocently false testimony about co-conspirator statements. It simply recognizes the reality that by definition co-conspirator declarations and informer testimony are frequently infected with a degree of duplicity and mendacity concealed as well from the Government as from others.

We therefore conclude that the phrase, "statements made by the defendant," as it appears in Fed.R.Crim.P. 16(a)(1)(A), should be interpreted when read *in pari materia* with Fed.R.Evid. 801(d)(2)(E), to include statements made by a co-conspirator which may be imputed to a defendant under Fed. R.Evid. 801(d)(2)(E),[8] if the Government does not intend to offer the co-conspirator as a witness at trial.

We also conclude, since the issue is raised by the Government, that the Jencks Act, 18 U.S.C. § 3500, and its implementing rule, Fed.R.Crim.P. 26.2, as incorporated by Fed.R.Crim.P. 16(a)(2), do not prevent such a reading of Rule 16(a)(1)(A). Simply put, the Jencks Act and the implementing rule are concerned only with protection against pre-trial disclosure of a particular, narrow

---

**8.** This means of course that co-conspirator statements not covered by Rule 801(d)(2)(E), either because not made "in the course of and in furtherance of the conspiracy," *see, e.g., United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.

1974) (cited as additional reason for non-disclosure), or because not hearsay declarations in any event, *see Inadi* — U.S. at — n. 11, 106 S.Ct. at 1128 n. 11, are not discoverable under Rule 16(a)(1)(A) as we interpret it here.

type of statement of "Government witnesses" or "prospective Government witnesses." 18 U.S.C. § 3500(a), (e); Fed.R. Crim.P. 26.2(f). Under the interpretation we make of Rule 16(a)(1)(A), the co-conspirator whose statements are discoverable is not a "prospective Government witness." That the discoverable statement of such a co-conspirator may be embodied, in substance or verbatim, in the kind of prospective witness statement protected from pre-trial disclosure by the Jencks Act is of course a factor that may be considered on a protective order motion under Fed.R. Crim.P. 16(d)(1). But the pre-trial discovery prohibition of the Act simply does not apply of its own force directly to the statements of non-witnesses. *See United States v. Thevis*, 84 F.R.D. at 55 ("statement of the defendant ... does not become the statement of a prospective government witness, solely because that witness reports the defendant's statement and attributes it to him").

### III

Apparently in order to press for an absolute rule against any pre-trial disclosure, the Government declined to seek in the district court a protective order, as it might have under Fed.R.Crim.P. 16(d)(1). Specifically, it declined, in response to the court's invitation, to submit the requested co-conspirator statements for the court's inspection.

On this appeal, as indicated above, the Government continues to press for such an absolute rule of non-disclosure. In doing so, the Government suggests that our decision in *Jackson* imposed at the other extreme an absolute rule of compulsory disclosure.

This, for whatever reason, mis-reads the *Jackson* decision, which expressly stated that disclosure was compelled only if it "does not unnecessarily reveal sensitive information," *Jackson*, 757 F.2d at 1491. More fundamentally, it ignores the "protective and modifying orders" provision of Fed.R.Crim.P. 16(d)(1), which, as indicated, the Government declined to invoke. The

*Jackson* reference of course plainly contemplated that disclosure of co-conspirator statements should always be subject to control, including outright prohibition, by courts exercising discretion in response to appropriate Government motions.

In support of its proposed absolute rule against any pre-trial disclosure and by way of challenge to the absolute rule of compulsory disclosure which it wrongly ascribes to *Jackson*, the Government suggests a number of adverse consequences if disclosure is required. Because they involve further misreadings of *Jackson* and in order to clarify that decision for future application, we discuss several of these.

First off, the Government suggests that the *"Jackson* rule" will allow discovery of oral statements made by co-conspirators in the course of the conspiracy even though comparable statements made by the defendant himself would not be discoverable. This is said to be so because *Jackson* disregarded the condition upon Rule 16(a)(1)(A) disclosure that *oral* statements are discoverable only if made "in response to interrogation by any person then known to the defendant to be a government agent."

This implies a specific consequence not expressly mandated by the *Jackson* decision. We now expressly disavow it. The co-conspirator statements which may be discovered under Rule 16(a)(1)(A) are subject to the same conditions that apply to those made by a defendant.

While, by definition, oral statements of a co-conspirator made in furtherance of a conspiracy, "which the government intends to offer in evidence [under Fed.R.Evid. 801(d)(2)(E) ]" will presumably never have been made under interrogation to a known government agent, that does not exhaust the possibilities that there may yet be discoverable co-conspirator statements. Disregarded by the Government's argument in brief is the fact that under Rule 16(a)(1)(A) discovery of defendant statements is not confined to oral statements made to known government agents. It also includes "any relevant written or recorded statements

made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." On our interpretation, the same type statements made by co-conspirators, are discoverable under Rule 16(a)(1)(A).

Rule 16(a)(1)(A) is designedly non-specific as to what is meant by "statements" of defendants (hence co-conspirators). *See* Fed.R.Crim.P. 16(a)(1)(A) advisory committee note (amended rule "leaves the matter of the meaning of the term unresolved and thus left for development on a case-by-case basis"). The courts are indeed not unanimous in their interpretation of the meaning to ascribe in this context to "written or recorded." *See generally* 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 253, at 49 (1982). Because that exact problem has not yet been presented in this case, nor definitively resolved in this circuit, we decline to address it in detail here. It suffices here to observe that whatever the full reach of the phrase, it must obviously include any statements (or copies) that were written by a co-conspirator (or defendant) or that were contemporaneously "recorded," and that are in the Government's possession. *See id.*

This disposes of the Government's suggestion that the *"Jackson* rule" authorizes wider discovery of co-conspirator than of defendant "statements." It also disposes of the related suggestion that in order to comply with the *"Jackson* rule" the Government must depose all "potential witnesses concerning the declarations of co-conspirators" so that it may preserve them "in a discoverable form." Of course, the Government is under no greater obligation to preserve in any particular form the statements of co-conspirators than it is to preserve those of defendants. The Rule simply speaks to what is discoverable as of the time of a request for discovery.

The other destructive consequence the Government would read into the *"Jackson* rule" is equally without substance. It is that by absolutely compelling disclosure of co-conspirator statements, it would "be likely to subject [the prospective witnesses to co-conspirator declarations] to threats, intimidation, and bribery." If the *Jackson* rule, as here elaborated, compelled disclosure under any and all circumstances, the Government's expressed concern would be fully justified. But, as indicated, and as *Jackson* plainly contemplated, disclosure is not absolutely compelled. The courts are empowered to limit it, condition it, or absolutely prohibit it in the interests of witness security or any other compelling reason, under Rule 16(d)(1). Among the protective orders that might, for example, be entered in response to a sufficient showing of need would be one prohibiting disclosure of statements inextricably embodied in and not subject to effective excision from, Jencks Act witness statements. By this means the courts may effectively guard against any "incidental contravention of the Jencks Act," a consequence posited as an inevitable and invariable one in the Government's argument.

Finally, the Government suggests that under the *"Jackson* rule," as it read it, an intolerable administrative burden would be imposed upon it in complying with requests or orders for disclosure of co-conspirator statements. Much of the Government's recital of difficulties is scotched by the proper interpretation of *Jackson* we have elaborated here. What remains is simply the undoubted difficulty, administratively and tactically, that attends the requirement of any Government pretrial disclosure of materials under Rule 16(a)(1)(A) in this type case. Taking the Government's remaining concern at face value, we see no special difficulty, other than that of added volume, in dealing with imputable co-conspirator statements under the interpretation of Rule 16(a)(1)(A) here made.

■ Without attempting to anticipate every practical difficulty or to lay down any general guidelines for practice, we may project the following general method of Government response. Upon a request for disclosure of co-conspirator statements, the

Government need only search its files to determine if it has any "written or recorded" statements of co-conspirators, that may be imputable to the defendant under Rule 801(d)(2)(E).[9] That it may have some such embodied in the statements of prospective 801(d)(2)(E), Jencks Act witnesses does not automatically exempt the co-conspirator declarations from pre-trial disclosure. But because of concern for the security of prospective 801(d)(2)(E) witnesses, or the co-conspirator, or both, the Government may properly seek a protective order on the basis of demonstrated need. Fed.R.Crim.P. 16(d)(1). This may, under appropriate circumstances, be handled ex parte, as a further means of protecting witness security. *Id.*

Aside from the possibility of seeking the protective order, the Government may also make tactical decisions that will avoid the need for pre-trial disclosure. As here interpreted, disclosure need only be made if the co-conspirator is not a prospective Government witness. No compulsion exists for disclosure of co-conspirator statements if the co-conspirator is a prospective Government witness, thereby coming under Jencks Act protection. Such tactical decisions may be made progressively. An original decision to use the co-conspirator as a Government witness, resulting in immediate non-disclosure, could be reexamined, and sanctions avoided by later disclosure. Fed.R.Crim.P. 16(c) (duty to disclose is continuing). Indeed, a detailed protective order, specifically authorizing such progressive disclosure could be sought, depending upon the administrative and tactical exigencies of the particular case.

### IV

In sum, we decline to read Fed.R.Crim.P. 16(a)(1)(A) as absolutely prohibiting any pre-trial discovery of co-conspirator statements. Instead we hold, elaborating upon *Jackson*'s ruling, that subject to the power of the district courts to enter protective orders in particular cases, the potentially imputable statements of co-conspirators who are not prospective government witnesses are discoverable before trial under the same conditions that the direct statements of defendants are discoverable under Rule 16(a)(1)(A). We hold, that is, that such disclosure is neither absolutely compelled nor absolutely prohibited by the relevant rules, but is to be allowed, or disallowed, or conditioned in the discretion of district courts acting pursuant to Rules 16(a)(1)(A) and 16(d)(1).

We therefore affirm the district court's suppression order and remand for further proceedings. In view, however, of the clarification and elaboration of *Jackson* that we have undertaken here, we affirm without prejudice to the Government's right, if so disposed, to move upon remand for reconsideration of the suppression order and for a protective order, and without prejudice to the power of the district court, if so disposed, to entertain and consider any such motions in light of this opinion. As to whether the district court should reconsider and if so how it should rule, we express no opinion.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

With what Judge Phillips has written in the majority opinion I have in general no disagreement. Indeed, except, for its final paragraph, allowing the Government to convert the decision into an advisory opinion, the consequences of which it can entirely escape, now that the opinion has proven unfavorable to the Government, my instinct is to applaud. However, I feel constrained to express my doubts that there was jurisdiction for the Fourth Circuit to express itself at all.

The effort of the Government was to manufacture grounds for an immediate review of an order which properly it could appeal from only by suffering dismissal of the proceeding. The suppression of the co-conspirator statements which might be imputed to the defendants, Roberts and

9. *See supra* note 8.

Lloyd, was done to permit a contrived appeal and thrust this Court into a situation where, to fall in with the Government's stratagems, we have had to countenance a piece-meal appeal. "Apparently in order to press for an absolute rule against any pretrial disclosure, the Government declined to seek in the district court a protective order, as it might have under Fed.R.Crim.P. 16(d)(1)." Slip opinion at 14.

18 U.S.C. § 3731, which limits the Government's right to appeal in criminal cases, specifies, in part, that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ..." It is undoubtedly "axiomatic," as the Court stated in *Carroll v. United States*, 354 U.S. 394, 399, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957), that "the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute." This proposition, for reasons not only related to general jurisdictional considerations, but also double jeopardy and speedy trial principles, applies to our jurisdiction to hear appeals by the United States in criminal cases. *United States v. Kane*, 646 F.2d 4, 5 (1st Cir.1981); *United States v. Apex Distributing Co.*, 270 F.2d 747, 749 (9th Cir.1959).

18 U.S.C. § 1371 was amended in both 1968 and 1971. The 1968 amendment allowed appeals from decisions sustaining motions to suppress, but the legislative history, as reviewed by the First Circuit in *United States v. Kane*, 646 F.2d at 6 n.1, does not "contemplate review of discovery orders ... through appeal of the orders themselves," but rather "Congress expressed the intention of allowing appeals of dismissals based on noncompliance with discovery orders with review of the underlying discovery orders in the context of such appeals."

In *Kane*, the district court's order did "not purport to suppress or exclude evidence. Rather it merely requires the disclosure of certain information." *Id.* at 5. Here the situation is similar to that in *Kane.* The district court ordered compliance with a magistrate's discovery order. There is no indication it, in the normal course, had any intention of suppressing or excluding evidence. In order "to obtain immediate review of that Order, Government counsel informed the court that the Government would not comply with the order and invited the imposition of sanctions. Majority opinion, p. 583. This procedure contravenes 18 U.S.C. § 1371. As the court in *United States v. Stipe*, 653 F.2d 446, 447 (10th Cir.1981), observed when it found that a similar stratagem deprived it of jurisdiction, "the government sought to have what might be called a dry run prior to trial, together with appeal of rulings which it considered to be unfavorable with respect to the order of proof in a conspiracy case and the meaning of 'independent evidence,' together with admissibility of post conspiracy statements of [a] defendant ..." Here, the Government's "dry run" was related to the co-conspirator statements.

The proper course here would have been for the Government, in due course, to have refused to disclose and have appealed after dismissal of the indictment by the district court. *See United States v. Jackson*, 508 F.2d 1001, 1005 (7th Cir.1975). The Government was apparently unwilling to pursue such a course, though other parties, in general, have no other course if they wish to appeal in the middle of a case. Given the limitations on our jurisdiction, I believe we should not countenance the Government's attempt to make an end run around orderly procedures of appeal and I would have found we were without jurisdiction to hear the appeal.