**UNITED STATES of America,
Plaintiff-Respondent.**

v.

**Anthony M. PALERMO, Defendant-
Appellant.**

**No. 388, Docket 25085.**

United States Court of Appeals
Second Circuit.

Argued June 3, 1958.

Decided Aug. 18, 1958.

See also 21 F.R.D. 11.

398

Wyllys S. Newcomb, New York City (Royall, Koegel, Harris & Caskey, John A. Wells, Robert E. Frisch, Andrew L. Clark and Burton N. Bromson, New York City, on the brief), for defendant-appellant.

Earl J. McHugh, Asst. U. S. Atty., New York City (Paul W. Williams, U. S. Atty., and Charles H. Miller, Asst. U. S. Atty., New York City, on the brief), for plaintiff-respondent.

Before HINCKS, PICKETT and MOORE, Circuit Judges.

PICKETT, Circuit Judge.

The defendant, Anthony M. Palermo, a New York doctor, was convicted on each of three counts of an indictment charging him with wilfully attempting to evade and defeat his personal income taxes for the years 1950, 1951 and 1952, in violation of Section 145(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 145 (b). During the course of the trial, a demand was made by the defendant for the production of a written memorandum prepared by Internal Revenue Agents sometime after a conference between them and a witness who subsequently testified for the Government at the trial.[1] The trial court denied the request on the ground that the memorandum was not of the character which was required to be produced under the provisions of Title 18 U.S.C.A. Section 3500.[2] The right of the defendant to inspect and use the memorandum is the single question presented by this appeal.

During the investigation of the defendant's income for the years in question, the Internal Revenue Agents took the sworn testimony of the accountant whose firm had prepared his tax returns. After the testimony was transcribed, the accountant again appeared before the agents to read and sign the transcript of his testimony. Some corrections were noted and an affidavit to effect the changes was made and executed. Shortly after the meeting was concluded, a memorandum of what had taken place at the meeting was prepared by the agents and placed in the Government files. It referred to the correction affidavit and stated that the witness gave further oral information in answer to questions. The additional information contained in the memorandum also concerned the preparation of defendant's tax returns and related to subject matters about which the accountant later testified. A copy of the sworn testimony and the supplemental affidavit, together with the witness' testimony before the grand jury, were delivered to defendant's attorneys.

■ We do not agree with defendant's contention that under the provisions of Section 3500 the memorandum should have been made available to him. The term "statement", as used in the Section, refers to "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral state-

---

1. The memorandum was marked "Court's Exhibit 2" and is part of the record in this Court.

2. This section was enacted shortly after the decision of the United States Supreme Court in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. Its purpose was to fix standards by which statements and reports of a witness in the possession of the Government should be made available to a defendant in a criminal prosecution after the witness had testified.

ment." It is quite apparent from the record that this memorandum was made from memory by one of the agents and was not intended to be a "substantially verbatim recital" of anything said by the witness. It was merely a summary of the agent's recollection of what had transpired at the meeting. The witness had not signed, adopted or approved it. It does not appear that the memorandum was a transcript of notes taken during the interview or that it purported to be a recorded verbatim recital, or nearly so, of what the witness had said. The declared purpose of the statute was "to provide for the production only of written statements previously made by a Government witness in the possession of the United States which are signed by him or otherwise adopted or approved by him, and any transcriptions or recordings of oral statements made by the witness to a Federal law officer, relating to the matter as to which the witness has testified." U.S.Code Congressional and Administrative News, 85th Congress, First Session, 1957, page 1862. This would include, we think, memoranda prepared by Government agents of oral statements made to such agents by Government witnesses, which are shown to be a substantially verbatim recital of oral statements contemporarily recorded by the agent.[3] The evident purpose of the stat-

ute is to limit the right of inspection for use in cross-examination to reasonably accurate or authenticated statements and reports, for which the witness, not the Government agent, is responsible. The document in question does not come within this category.

The defendant further contends that, even though production of the memorandum is not required by the provisions of Section 3500, he is, under the rule of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, entitled to have it produced for his use. In the Jencks case, Government witnesses who were in the employ of the United States made numerous written and oral reports to the F. B. I. concerning their activities with the Communist Party. The court held that the Government must produce for inspection all written reports of the witnesses and also the oral reports as recorded by the F. B. I., touching the events and activities to which they testified at the trial. There the Court was dealing with written and oral reports made to superiors, by former Communists who had been employed by the United States to do undercover work. It developed after the trial that much of the testimony given by one witness was recanted as deliberately false. The broad language used by the Court [4] was interpreted differently by

---

3. When the Bill was discussed on the floor of the United States Senate, the following colloquy occurred:

"Mr. Revercomb: Does the definition of 'records' which have been made or which must be produced, include memoranda made by an agent of the government or any other statement which may have been obtained and signed?

"Mr. O'Mahoney: I think it would include a memorandum made by an agent of the Government of an oral statement made to him by a Government witness, but not by a third party. * * *

"Mr. Javits: As a practical matter, then, what has been done with the so-called records provision is to tie it down to those cases in which the agent actually purports to make a substantially verbatim recital of an oral statement that the witness has made to him—not the agent's own comments or a recording of

his own ideas, but a substantially verbatim recital of an oral statement which the witness has made to him, and as transcribed by him; is that correct?

"Mr. O'Mahoney: Precisely." 103 Cong.Rec. 16488 (1957).

4. In speaking of the particular reports under consideration in the Jencks case, the Court said:

"* * * We now hold that the petitioner was entitled to an order directing the Government to produce for inspection all reports of Matusow and Ford in its possession, written and, when orally made, as recorded by the F. B. I., touching the events and activities as to which they testified at the trial. We hold, further, that the petitioner is entitled to inspect the reports to decide whether to use them in his defense. Because only the defense is adequately equipped to determine the effective use for purpose of

lower courts and by attorneys.[5] The enactment of Section 3500 followed in the wake of this decision. Although the Committee reports indicate that the legislation was "not designed to nullify, or to curb, or to limit the decision of the Supreme Court insofar as due process was concerned," or to permit the prosecution to withhold competent and relevant statements and reports which might be of value to a defendant in the cross examination of a witness, its purpose was to provide a procedure and establish the rules and conditions under which trial courts shall direct the production of statements or reports of witnesses in the possession of the United States. Without considering whether there is a conflict between the Jencks decision and the requirements of Section 3500, we hold that the legislation is the exclusive standard in this field and controls the procedure to be followed in such cases.[6] Otherwise, the legislation is meaningless. Bergman v. United States, 6 Cir., 253 F.2d 933; Lohman v. United States, 6 Cir., 251 F.2d 951.

Affirmed.

discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less." (Footnote omitted.) 353 U.S. 657, 668–669, 77 S.Ct. 1007, 1013, 1 L.Ed. 2d 1103.

5. For examples see U.S.Code Cong. and Adm.News, 85th Congress, First Session, 1957, pages 1862–9.

6. The Committee reports on the legislation indicate that Congress looked with favor upon Chief Judge Moore's analysis of the Jencks decision in United States v. Anderson, D.C.E.D.Mo.1957, 154 F. Supp. 374, 375–376, which reads as follows:

"(1) Before the Defendant in a criminal cause is entitled to production and inspection of a statement made by a person other than himself in the possession of the United States—(a) such person must have been called as a witness by the United States, (b) the Defendant must establish on cross-examination that a statement was made by such witness, (c) that such statement is in the possession of the United States, and (d) that such statement touches the events and activities related in his direct examination.

"(2) Such statement must either have been (a) written by the witness himself, or, (b) recorded by someone acting for the United States.

"Category (b) includes only continuous, narrative statements made by the witness recorded verbatim, or nearly so, by persons acting for the United States, and does not include notes made during the course of an investigation (or reports compiled therefrom) which contain the subjective impressions, opinions or conclusions of the person or persons making such notes.

"(3) When any document contains material which a defendant, having made the preliminary showing set out in (1), is entitled to see, and also contains matters which he is not privileged to see, the United States need furnish only that portion or portions. which he is entitled to see and may retain the balance."

See U.S.Code Cong. and Adm.News, 85th Congress, First Session, 1957, pages 1865–6.