UNITED STATES of America, Plaintiff,

v.

Joseph GALLO, Joseph Zingaro, et al., Defendants.

No. CR–86–452 (JBW).

United States District Court,
E.D. New York.

Feb. 19, 1987.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Honorable Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D.N.Y., Brooklyn, N.Y. by Douglas E. Grover, Laura A. Ward, for the United States.

Jay Goldberg, Judd Burstein, New York City, for defendant Joseph Zingaro.

(All defendants join in this motion.)

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendant Joseph Zingaro has been indicted, along with fifteen other co-defendants, in a complex criminal action, involving seventeen separate counts and numerous alleged instances of both discrete and continuing criminal activities, in a case styled *United States v. Gallo, et al.*, 653 F.Supp. 320 (E.D.N.Y.). The first and central count of the indictment alleges that most of the defendants were members of, or associated with, a secret criminal organization called the Gambino Crime Family, and that the operations of "the Family" constituted a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

This is the second (*Gallo II*) in a series of rulings that the court will be required to make before this complex case can proceed to trial. *See United States v. Gallo, et. al.*, 653 F.Supp. 320 (E.D.N.Y.1986) (*Gallo I*) (release of defendants from pretrial detention because of long delays). Further pretrial opinions will be required in view of the extensive motion practice underway. These huge, complicated RICO cases require specially tailored proceedings if the court is to properly control the litigation in a way protective of both the public's and the defendants' interests.

Defendant Zingaro has moved for pretrial disclosure of those statements made by alleged co-conspirators which the government will seek to introduce at trial as defendants' statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. All the defendants have joined in the motion. Primarily they seek to discover statements made by unindicted co-conspirators, many of whom are no longer alive.

The government contends that it has already produced all materials discoverable under Rule 16(a) of the Federal Rules of Criminal Procedure. It argues that the disclosure requested by the defendants does not fall within the ambit of Rule 16(a) and, in any event, is barred by both the Jencks Act, 18 U.S.C. § 3500, and by *United States v. Percevault*, 490 F.2d 126 (2d Cir.1974). The motion requires consideration of the interaction between Rule 16(a), the Jencks Act, and Rule 801(d)(2)(E) of the Federal Rules of Evidence; of the inherent power of a trial court to control litigation before it; and of the special problems presented by a complex RICO prosecution.

Because such a RICO case may hinge on a relatively vague or abstract sense of involvement or constructive knowledge, evidence concerning alleged co-conspirators can have an enormous impact on the determination of culpability. Defendants may be significantly more implicated than usual by the actions and admissions of others, for they may well be held responsible by virtue of the conspiracy for diverse, long-continued and dangerous activities of which they had little or no knowledge. "A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants.... In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966) (citations and footnote omitted). A fortiori that is true of a case such as the one at bar.

Pretrial discovery is an especially important tool in ensuring that both sides of such a complex case are well prepared for trial, and in clarifying for the court as well as the parties the allegations, questions, and burdens of proof that are to be issues of dispute at trial. Broad discovery not only provides vastly improved adjudicative efficiency, but also protects defendants from elements of surprise that can have an inordinately prejudicial effect on the outcome of a case. "To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

Moreover, the complicated severance, *in limine* evidence, double jeopardy and other preliminary motions now *sub judice* all require the court to know much more about details of the evidence on which the government intends to rely than would usually be required. Discovery here is a tool necessary not only to ensure due process for the defendants but also to assist the court in the proper administration of the case. A complex case such as this one must be approached with full appreciation for the mandate of Rule 2 of the Rules of Criminal Procedure, that those Rules "are intended to provide for ... just determination [and] fairness in administration ...," and of Rule 102 of the Rules of Evidence, requiring construction "to the end that the truth may be ascertained and proceedings justly determined." See also the discussion of the inherent power of the court, *infra.*

The first section of this opinion explains why discovery of defendants' own statements mandated by Rule 16 of the Federal Rules of Criminal Procedure extends to all such statements "recorded" by the government irrespective of the form of that recording. The opinion next examines an alternative basis for mandating such broad disclosure of defendants' statements, namely, the inherent power of the court to regulate discovery; the exercise of that power is particularly appropriate in a complex case such as this one. The following section demonstrates why the Jencks Act does not affirmatively bar required pretrial discovery of these sorts of statements, even where the statements may be included within the testimony of prospective government witnesses. The opinion then explains why co-conspirators' statements must be treated in the same way as defendants' own statements for purposes of discovery, with the exception that disclosure is not required where the co-conspirator whose statements are in question is himself a

prospective government witness. Finally, the opinion addresses some general issues related to expanded discovery, including the security of witnesses and the improved administration of complex criminal litigation.

*Rule 16(a)(1)(A)*

The government contends that it has already disclosed all co-conspirator statements that would be discoverable under Rule 16(a)(1)(A) were they the defendants' own statements. It insists that the defendants seek disclosure of statements that would not fall under the ambit of Rule 16 even if they were the defendants' declarations. The claim is that the defendants request greater discovery rights for co-conspirator statements than they would be entitled to were they seeking to obtain statements of the defendants themselves. To assess the nature and validity of the government's contention, we turn to a more detailed analysis of Rule 16(a)(1)(A).

It is not disputed that if co-conspirators' statements are discoverable they are discoverable only to the same extent as defendants' own statements. *See, e.g., United States v. Roberts,* 793 F.2d 580, 586 (4th Cir.1986) (co-conspirator statements "subject to the same conditions that apply to those made by a defendant"), *rev'd on other grounds,* 811 F.2d 257 (4th Cir.1987) (in banc); *United States v. DeFabritus,* 605 F.Supp. 1538, 1548 (S.D.N.Y.1985) ("court will not impose disclosure beyond that required by Rule 16").

■ The first operative question therefore is the extent to which *defendants'* statements are discoverable under Rule 16(a)(1)(A), for that constitutes the outside limit of discoverability for co-conspirators' declarations as well. In this case, the government has provided the defendants with hundreds of hours of tape recordings and transcripts of those recordings, containing many defendant and co-conspirator statements. In addition, the government has provided copies of all statements made to known FBI agents, and all documents in the government's possession which were prepared by and for the defendants. All of these materials clearly are discoverable under Rule 16(a)(1)(A).

There are at least two kinds of statements which the government has not provided here. In the first case, a defendant or co-conspirator makes a declaration in the presence of an undercover government agent and at some point that agent "records," or writes down, that statement. In the second, a defendant's or co-conspirator's declaration is overheard by a "third party," who may or may not "record" the statement; the third party informs a government agent of the declaration, and the agent records the third party's recapitulation of the defendant's or co-conspirator's reported statement. Alternatively, the statement may have been reported when the third party conveyed the statement to the grand jury.

The question is whether these types of statements are discoverable under Rule 16(a)(1)(A). In considering this issue, we must bear in mind that Rule 16 was amended in 1975 in order "to promote greater pretrial discovery," in the view that "broad discovery contributes to the fair and efficient administration of criminal justice ... by minimizing the undesirable effect of surprise at the trial." *Notes of Committee on the Judiciary,* House Rept. No. 247, 94th Cong., 1st Sess. 13, *reprinted in* 1975 U.S. Code Cong. & Ad.News 674, 685. Congress adopted the following reasoning:

> [B]road discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence.

*Id., quoting·Notes of the Advisory Committee on Rules,* 62 F.R.D. 271, 307, 308 (1974). · The expansion of Rule 16 coincided with the growing recognition that defendants' prior statements were among the most important forms of withheld information, discovery of which would enhance fairness and efficiency. As the Court of

Appeals has noted, "[c]ommon sense and judicial experience teach that a defendant's prior statement in the possession of the government may be the single most crucial factor in the defendant's preparation for trial." *United States v. Percevault*, 490 F.2d 126, 129–130 (2d Cir.1974).

The importance Congress and the Courts give to pretrial discovery of relevant evidence is reflected in the revised Rule 16(a)(1)(A) itself. It provides for mandatory disclosure before trial of a defendant's own statements, reading in relevant part:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

Pretrial production of prior statements benefits all parties and the court. As the Court of Appeals acknowledges:

> [I]n most criminal cases, pretrial disclosure will redound to the benefit of all parties, counsel, and the court. Indeed, sound trial management would seem to dictate that Jencks Act material should be transmitted prior to trial, especially in complex cases, so that those abhorrent lengthy pauses at trial to examine documents can be avoided.

*United States v. Percevault*, 490 F.2d 126, 132 (2d Cir.1974). Still, the emphasis in the courts prior to the 1975 Amendments was on "solicit[ing] broad disclosure," *id.*, rather than on compelling such cooperation. The 1975 Amendment, however, explicitly made disclosure of defendants' statements "mandatory under the circumstances prescribed in subdivision (a)(1)(A)," rather than discretionary, thus resolving any ambiguity "in the direction of more liberal discovery." *Notes of the Advisory Committee on Rules*, 62 F.R.D. 271, 307, 308 (1974).

In this historical context we turn to the problem of whether the disputed forms of statements at issue here fall "under the circumstances prescribed in subdivision (a)(1)(A)." There are two possible clauses of 16(a)(1)(A) that must be considered. The first is the "oral statement" clause, which mandates discovery of "the substance of any oral statement which the government intends to offer in evidence at the trial made by. the defendant whether before or after the arrest in response to interrogation by any person known to the defendant to be a government agent."

■ The "known government agent" proviso is a curious limitation, added without explanation in an amendment that was intended to broaden, rather than narrow, the scope of pretrial discovery. As two members of Congress noted, this limitation is inexplicable: the test of discoverability should be whether the government intends to introduce the statement at trial; because the test for admissibility does not depend on who overheard the statement, or to whom the defendant thought he or she was speaking, the standard of discoverability should be similarly unconnected to these determinations. Statement of Reps. Holtzman and Drinan, in H.Rept. No. 247, 94th Cong., 1st. Sess. 36, *reprinted in* 1975 U.S. Code Cong. & Ad. News 707–08. Nevertheless, if the clause has any meaning at all, it should be limited to statements made as a result of "interrogation"; any statement not made in response to an official "interrogation" is not affected by the oral statements clause. Since it is unlikely that such statements are at all implicated in the instant case, we can safely ignore this clause in the discussion which follows. *But cf. United States v. Hoffman*, 794 F.2d 1429 (9th Cir.1986). In any event, oral

statements made to known government agents by co-conspirators would not be admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence, because they would not have been made "during the course and in furtherance of the conspiracy." *See infra.*

The clause under which the disputed statements here might be discoverable, then, is that which provides for discovery of "any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the evidence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." The government strongly contends that the requested statements here do not fall under Rule 16's "written or recorded statements" clause, as that clause has been interpreted in this circuit.

Congress did not specify the precise meaning of "written or recorded." The Advisory Committee on Rules explicitly declined to define "statements" within this clause, preferring to "leave [ ] the matter of the meaning of the term unresolved and ... left for development on a case-by-case basis." 62 F.R.D. 271, 307, 310 (1974). As the Committee noted, "recorded statements" could be defined in numerous different ways, including: substantially verbatim and contemporaneous statements; statements which reproduce the defendant's exact words; memoranda which are not verbatim but include the substance of a defendant's testimony; a summary of the defendant's statements; and statements discovered by means of electronic surveillance. *Id.* at 309.

The final category, defendants' statements overheard on a wiretap or an electronic bug, is indisputedly covered by the "written or recorded" clause, as are statements actually written by defendants. The government has in this case appropriately provided all such statements to the defense.

The crucial question is thus whether oral statements made to government agents or "third parties" are included in the "written or recorded" category if they are at some point memorialized by the government. Courts have responded in various ways to the "written or recorded statements" clause. Prior to the 1975 Amendment, one court ruled that discoverability should be a function of whether a written record was contemplated at the time the statement was made, regardless of the length of delay between the utterance and the memorialization. *United States v. Feinberg,* 502 F.2d 1180, 1182–83 (7th Cir.1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975). Another court ruled that discovery should be denied where the written record is made "second hand," not by the party who originally heard the statement, as in the case where a government agent records a witness' recollection of a defendant's statement. This connection was deemed "too attenuated for the statements to be considered written statements made by the defendant." *United States v. Walk,* 533 F.2d 417, 418 (9th Cir.1975).

In the wake of the 1975 amendments to Rule 16, some courts simply treated statements overheard by third parties as oral statements, without discussing whether the subsequent memorialization implicated the "written or recorded" clause. *See, e.g., United States v. Ostrer,* 481 F.Supp. 407, 418 (S.D.N.Y.1979). At least one court, though, ruled that a statement overheard by a third party and later recorded by the government is discoverable. *United States v. Thevis,* 84 F.R.D. 47, 55 (N.D.Ga. 1979).

In this circuit, the "written or recorded" clause has not received much attention. The government contends that *United States v. Viserto,* 596 F.2d 531 (2d Cir. 1979), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979), squarely controls this issue, precluding discovery of the disputed statements. In *Viserto,* a government agent had overheard a conversation of the defendant, made a cryptic note of the conversation on a scrap of newspaper, and testified about the conversation at trial.

At the outset, it is well to note that Judge Gurfein in *Viserto* gave little attention to the problem because the government had in fact made the statement available to the defense on the eve of trial. Moreover, what was involved in *Viserto* was a hastily jotted reminder rather than any formal recording. Since "it might be argued" that this scrap was a recording, the court did go on to state that "because the statement was memorialized originally only in the recollection of a witness it is not discoverable." *Id.* at 538. Were it not for the eminence of the careful judge who wrote this aside, it might be treated as an unnecessary dictum restricted to the particular facts of the case. *But see United States v. Nelson,* 606 F.Supp. 1378, 1389 (S.D.N.Y.1985) (adopting *Viserto* passage as uncontroverted law of circuit).

Nevertheless, it is difficult to discern precisely how *Viserto* interprets Rule 16(a)(1)(A), even if the discussion there is not treated as dicta. To begin with, the issue in *Viserto* arose in a completely different posture than that involved here. In *Viserto,* the issue was retrospective, namely, whether withholding the statements until the eve of trial did in fact prejudice the defendant. *Id.* In the instant case, we must decide at the outset whether the statements should be disclosed prior to trial; the issue is thus the proper scope of Rule 16, not whether a possible violation of that rule unfairly prejudiced a trial to such an extent that a conviction should be overturned.

■ The *Viserto* court seemed to rely on the distinction between memorializations that are contemplated when the statement is made, and those that are based merely on the witness' recollection of the declaration. Thus, at a minimum, *Viserto* would seem to mandate production of those statements the memorialization of which is contemplated by the undercover agent or third party at the time of the declaration. *Cf. United States v. Feinberg,* 502 F.2d 1180, 1182–83 (7th Cir.1974), cited in *Viserto,* 596 F.2d at 538. The government in the present case must at the very least disclose all such statements.

■ But the "contemplated memorialization" rule should be seen as a floor, rather than a ceiling, for pretrial discovery. On grounds of policy as well as syntax, Rule 16 discovery should not turn on a finding of whether memoralization of the declaration was contemplated at the time it was overheard. The contemporaneousness of the memorialization is not material to the statement's admissibility, so it should have no bearing on the discoverability of that statement. The rationale which argues in favor of discovery is no less pressing just because the witness to a statement does not plan to write it down at the moment that he or she hears it. The importance of the memorialization lies in the fact that there exists a physical document that can be turned over, as contrasted with an unrecorded memory that the prosecutor would need to compel a witness to put in written form in order to comply with defendant's discovery requests. So long as it is in a writing available to the government when the defendants make their Rule 16 demand, it should be deemed sufficiently memorialized under that Rule.

There is no reason that the disputed statements should be less susceptible to discovery than statements recorded by wiretap. It is more important that a defendant be advised of "informal" statements, that is, those that are recorded or memorialized in a less reliable fashion. The chance of inaccurate or false attribution is much greater, and the probability of unfair prejudice much more pronounced, in those cases that the government would exclude from Rule 16 coverage. It is more difficult for a defendant to recall the content and context of "informal" statements than it is for him or her to remember what was said in the course of a formal interrogation, yet the narrow reading of Rule 16 would allow discovery only in the latter case. *See United States v. Walk,* 533 F.2d 417, 425 (9th Cir.1975) (Koelsch, J., dissenting). Similarly, wiretap recordings come with "built-in" context and veracity, while

the testimony of witnesses who allegedly overheard and jotted down the defendants' declarations may be rife with inaccuracy or decontextualization; yet only the less reliable statement would be withheld from discovery were we to give a narrow reading to *Viserto*.

■ Neither should there be any material difference for purposes of Rule 16 between a statement overheard by an undercover government agent and that overheard by a third party who subsequently informs the agent or the grand jury. In both cases, the government "records" the statement for future use at trial and elsewhere. The "attenuated" nature of the latter memorialization has no bearing on the original declaration's admissibility; thus, it should similarly have no effect on the discovery determination. In fact, discovery is more significant in the more attenuated case, not only because of the greater possibility of distortion that results from later memorialization, but also because the third party witness is likely to be less reliable than an agent of the government. "[T]he interposition of a third person between the defendant and the government agent does not alter the essential character of the defendant's statement or make it other than his own...." *Id.* at 423 (Koelsch, J., dissenting).

■ For the reasons stated above, the "written or recorded statements" clause of Rule 16(a)(1)(A) extends to any statement of a defendant memorialized before trial which the government intends to use at trial as an admission under Rule 801(d)(2) which was memorialized before trial. This is the reading of Rule 16 most in tune with Congress' express intent to expand that Rule toward "more liberal discovery."

In any event, whatever the rule in an "ordinary" criminal case, such an interpretation of Rule 16 discovery is essential if the court itself is to properly control the pretrial and trial stages of a massive and complex RICO case such as the one before us here. It is to this factor that we now turn.

## Inherent Power of the Court to Require Regulated Discovery

Even if Rule 16 is read in a more restrictive manner, consistent with the government's interpretation of *Viserto*, a district court has the inherent power to order discovery more far-reaching than that mandated by Rule 16. *United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975) ("Decisions of this court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses...."). This inherent judicial power to order discovery broader than that mandated by any explicit authorization has a long and venerable history predating the adoption of the Federal Rules. *See, e.g., United States v. Burr*, 25 Fed.Cas. 30, No. 14,692d (C.C.D. Va.1807) (Marshall, C.J., sitting as circuit justice); *United States v. Warren*, 53 F.Supp. 435, 436 (D.Conn.1944); *United States v. B. Goedde & Co.*, 40 F.Supp. 523, 534 (E.D.Ill.1941). *See also Shores v. United States*, 174 F.2d 838, 845 (8th Cir. 1949); Note, *The Scope of Criminal Discovery Against the Government*, 67 Harv. L.Rev. 492, 493, 497, 498–99 (1954).

The Rules have not supplanted the residual powers of the courts to order appropriate discovery. The Advisory Committee on Rules explicitly stated that the amended Rule 16 was to define only the *minimum* amount of discovery mandated. "The rule is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." 62 F.R.D. 271, 307, 308 (1974). The rules are intended, and must be construed, to "enhance a just determination," not to inhibit it. "[T]here must necessarily be some inherent authority in the federal courts" to order discovery by the government "when dictated by compelling circumstances." Kaufman, *Criminal Discovery and Inspection of Defendant's Own Statements in the Federal Courts*, 57 Colum.L.Rev. 1113, 1121 (1957). *But see United States v. Hoffman*, 794 F.2d 1429, 1430 (9th Cir.

1986) (no discussion of trial court's reliance on inherent powers); *United States v. Algie,* 667 F.2d 569 (6th Cir.1982) (rejecting district court's avoidance of Jencks Act limitations in special circumstances).

■ Assuming, *arguendo,* that Rule 16 is only as broad as the government's reading of *Viserto* allows, discovery of all memorialized statements of the defendants is, in the alternative, ordered pursuant to the court's inherent power to regulate discovery in a complex case.

### The Jencks Act

Even though discovery of the disputed declarations is allowable pursuant to Rule 16 and the court's inherent power, it might still be affirmatively barred by the statutory strictures of the Jencks Act, 18 U.S.C. § 3500. Most courts have juxtaposed treatment of Rule 16 and the Jencks Act, so that it is hard to tell which provision has been relied on to deny discovery. It is helpful to pose the question in the following manner: Assuming that disclosure of the statements may be ordered pursuant to Rule 16 or other authority, is such a mandate nevertheless superceded by the provisions of section 3500(a)?

The argument against discovery is that statements overheard by agents or third parties are only discoverable on the conditions set forth in section 3500(a), since they are statements contained *within* the statements of prospective government witnesses, i.e., the defendant's statement will be related as *part of* a witness' own statement. Section 3500(a) provides that:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

Federal Rule of Criminal Procedure 16(a)(2) provides some indication of the envisioned interplay between the dictates of

Rule 16 and the restrictions of the Jencks Act. It reads:

(2) Information Not Subject to Disclosure. Except as provided in paragraph[ ] (A) [Statement of Defendant] ... of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, *or of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.*

(Emphasis added.) It is argued that Rule 16(a)(2) reflects the alleged restriction of the Jencks Act that a defendant's statements within a witness' statement need not be disclosed to the defense until after the witness has testified on direct. The Jencks Act would then act as an exception to general discovery standards provided for in Rule 16(a)(1)(A). *See United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974) ("the Jencks Act is clearly applicable, for ... 3500 material is, by its very nature, a recitation of past occurrences"); *United States v. Hoffman,* 794 F.2d 1429, 1433 (9th Cir.1986); *United States v. Walk,* 533 F.2d 417, 420 (9th Cir.1975) (Jencks Act prohibits all pretrial disclosure of witness' statements, "even when such statements contain quotations allegedly attributable to the defendant"); *United States v. Feinberg,* 502 F.2d 1180, 1182 (7th Cir.1974) (Jencks Act proscribes discovery even of those parts of witness' statements "which relate conversations of the defendant"), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975).

The primary rationale underlying this reading is that it is impossible to "excise" the defendant's statements from the witness' statement without exposing the "contents" of the witness' statement, or the identity of the witness. *See, e.g., Walk,* 533 F.2d at 419; *Feinberg,* 502 F.2d at 1183 ("manifestly impossible" to reveal contents and circumstances of defendant's state-

ments without revealing contents of prospective witness' statement). This analysis assumes, of course, that the Jencks Act denies *any* pretrial production that might reveal the contents of a witness' statement, regardless of any independent right to discovery of materials within that statement. It is argued that this conclusion is supported by the language of Rule 16(a)(2), because it excludes from the ambit of Rule 16 "statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500." *See Walk*, 533 F.2d at 418 (regarding virtually identical precursor to Rule 16(a)(2)); *Feinberg*, 502 F.2d at 1182 (same).

■ This reasoning is now completely undermined by the language of the amended Rule 16(a)(2). The present rule reserves to the Jencks Act treatment of discovery of witness statements, *"[e]xcept as provided in paragraph[ ] (A) ... of subdivision (a)(1)* [of Rule 16]." (Emphasis added.) Defendant's statements discoverable under 16(a)(1)(A) are thus an *exception* to the dictates of section 3500(a), and an exception to the witness statement exception of 16(a)(2).

The Congressional history supports this less restrictive reading. The Conference Committee confronted a directly analogous problem concerning the other 16(a)(2) "exception," regarding so-called "work-product" documents. Work-product is excluded in 16(a)(2) from pretrial discovery. But as the committee insisted, the government cannot take advantage of the work product exception in order to withhold 16(a)(1)(A) defendants' statements. "[A] party may not avoid a legitimate discovery request merely because something is labeled 'report', 'memorandum', or 'internal document'. For example if a document qualifies as a statement of the defendant within the meaning of the Rule 16(a)(1)(A), then the labeling of that document as 'report', 'memorandum', or 'internal government document' will not shield that statement from discovery." Conference Committee Notes, H.Rept. No. 414, 94th Cong., 1st Sess.

12, *reprinted in* 1975 U.S.Code Cong. & Ad.News 713, 717. Similarly, if a statement qualifies as a statement of the defendant under 16(a)(1)(A), then the characterization of that statement as merely an excerpt of protected section 3500 material will not shield that statement from discovery.

■ Rule 16 was revised after the Jencks Act was enacted. It was considered in detail by Congress. To the extent that there is any conflict between Rule 16 and the earlier section 3500, the section is deemed modified to incorporate the latter provision. *Cf.* 18 U.S.C. § 3771 ("All laws in conflict with such rules shall have no further force ...").

It should also be recalled that the Jencks Act itself explicitly refers to statements "made by a Government witness or prospective government witness (other than the defendant)...." The parenthetical exclusion of the defendant must be regarded as an indication that Congress did not intend for section 3500 to apply to defendants' statements or those statements legally the equivalent of defendants' statements. The government cannot shield from disclosure otherwise discoverable statements merely by providing for the inclusion of these statements within statements of trial witnesses.

This reading not only is consistent with the underlying purpose of Rule 16; it also does not violate the purposes of section 3500. The Jencks Act simply does not concern the sort of "excerpts" in dispute here, nor address the use of "statements within a statement." The sorts of statements that are discoverable under *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and thus discoverable only after direct examination under section 3500(a), are those that are particularly valuable to the defense for purposes of cross-examination, and therefore primarily for assessment of a witness' credibility. *Jencks* concerned statements of the witness which might contradict the witness' testimony at trial, and which were thus valuable for impeachment purposes. *See*

*also Palermo v. United States,* 360 U.S. 343, 345–46, 79 S.Ct. 1217, 1221, 3 L.Ed.2d 1287 (1959). It is undisputed that the Jencks Act was intended to statutorily authorize this protection of impeachment material. *United States v. Palermo,* 258 F.2d 397, 399 (2d Cir.1958), *aff'd,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). "The purpose of the Jencks Act was to provide the defense with the means of impeaching a government witness by means of a prior inconsistent statement, . . . while not allowing an unrestrained search through government files." *United States v. Catalano,* 491 F.2d 268, 274 (2d Cir.1974), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1971). Jencks Act material, discoverable only after direct examination of the witness, does not concern those defendants' statements which the government will actually use as evidence-in-chief in its affirmative case at trial as admissions of the defendant.

The definition of "statement" in section 3500 (and thus in 3500(a)) is, in fact, different from the definition of "statement" in Rule 16. "[T]he language of amended Rule 16(a) is unqualified in contrast to the limited definition of 'statement' in § 3500." *United States v. Crisona,* 416 F.2d 107, 114 (2d Cir.1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970).

As Justice Brennan has pointed out, it is dangerous to "exalt" and "exaggerate" the restrictions of section 3500, "in disregard of the congressional aim of reaffirming the basic Jencks principle of assuring the defendant a fair opportunity to make his defense." *Palermo,* 360 U.S. at 365, 79 S.Ct. at 1231 (Brennan, J., concurring). "There inheres in an overrigid interpretation and application of the statute the hazard of encouraging a practice of government agents' taking statements in a fashion calculated to insulate them from production." *Id.,* 360 U.S. at 365–66, 79 S.Ct. at 1231 (Brennan, J., concurring).

 Such an overrigid reading of section 3500(a) would lead to the conclusion that pretrial discovery is never permissible for any material contained in the state-ments of prospective witnesses, even if there are alternative bases for such discovery. But that interpretation has never been accepted. For instance, compliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for *Brady* material. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, (1963). If witness' statements contain material exculpatory to the defendant, due process requires pretrial production under *Brady* despite the fact that it may be *Jencks* material as well. *See United States v. Starusko,* 729 F.2d 256, 263 (3d Cir.1984); *United States v. Layton,* 564 F.Supp. 1391, 1396 (D. Oregon 1983); *United States v. Thevis,* 84 F.R.D. 47, 54 (N.D.Ga.1979).

 A rule which denied discovery of all statements contained within a witness' testimony would also be inconsistent with the uncontroverted standards regarding oral statements and electronic recordings. Oral statements of defendants made to known government agents are discoverable prior to trial pursuant to 16(a)(1)(A), even though those statements may be part of the agent's prospective testimony at trial. Similarly, statements obtained through wiretaps and electronic bugs are not subject to Jencks Act limitations, even if the conversations are to be related by government witnesses at trial.

It is simply untenable, then, to insist that all material contained in witnesses' statements is subject to section 3500(a) restrictions. If that were the case, all of the material indisputedly covered by 16(a), and voluntarily produced by the government here, would be subject to Jencks Act restrictions. The fact that this interpretation is not even suggested by the government is evidence that section 3500 does not cover every parcel of evidence about which a witness will testify at trial.

Section 3500 is meant to protect FBI and government files "from the danger of the disclosure of irrelevant and incompetent matter. . . ." Jencks Act Senate Report, No. 981, 85th Cong., 1st Sess.1862, *quoting Gordon v. United States,* 344 U.S. 414,

419, 73 S.Ct. 369, 373, 97 L.Ed. 447 (1953), *reprinted in* 1957 U.S.Code Cong. & Ad. News 1861, 1862. Rule 16, by contrast, is limited in scope. Discovery under Rule 16 will never constitute a "broad or blind fishing expedition among documents possessed by the Government," *id.*, and will never "compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness." *Palermo*, 360 U.S. at 350, 79 S.Ct. at 1223. These concerns, while relevant to the production of impeachment material addressed by section 3500, do not bear on exculpatory *Brady* material or statements of a defendant or co-conspirator.

■ A statement remains that of a defendant, admissible against him at trial, "regardless of who reports, witnesses, or memorializes it. It does not become the statement of a prospective witness, solely because that witness reports the defendant's statement and attributes it to him." *United States v. Thevis*, 84 F.R.D. 47, 55 (N.D.Ga.1979). *Cf. United States v. Walk*, 533 F.2d 417, 423 (9th Cir.1975) (Koelsch, J., dissenting) (interposition of third party between defendant and government agent does not alter essential character of statement or make it other than defendant's own). To whom the statement was uttered, who memorialized it, how "attenuated" the chain of memorialization was, and whether the statement is later incorporated in a witness' statement, are all determinations wholly immaterial to the evidentiary content of the statement. Therefore, all such statements should be disclosed prior to trial regardless of these variables, subject to the court's discretion to limit discovery in the interest of protecting specific witnesses and other like considerations.

This interpretation is consistent with the standard proposed by the American Bar Association, which provides that the government shall disclose to the defense prior to trial "any written or recorded statements and the substance of any oral statements made by the accused or made by a codefendant." ABA Standards for Criminal Justice, Standard 11–2.1(a)(ii), ch. 11 at 14 (Supp.1986). The ABA commentary explicitly notes that "the discoverability of the statement does not depend upon its written or oral form," and that the statement should be discoverable "even if made to a third party rather than to prosecution or police personnel." *Id.*, ch. 11, at 20. To the same effect, see also: National Advisory Commission, Courts § 4.9(2) (1973); National Conference of Commissions on Uniform State Laws, Uniform Rules of Criminal Procedure § 421(a) (1974); National District Attorneys Association, National Prosecution Standards § 13.2(A)(2) (1977).

*Rule 801(d)(2)(E)*

We turn now to the question of whether co-conspirators' statements should be discoverable to the same extent as statements of defendants themselves.

Rule 801(d)(2) of the Federal Rules of Evidence provides that admissions by a party are not hearsay. Subsection 801(d)(2)(E) defines as such an admission "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." These statements are admissible at trial as if they were the defendant's own utterances. Especially where a large, long and diffuse conspiracy is the focus of the allegations, as it is in this RICO action, a defendant will likely be faced with many co-conspirator's statements attributable to the defendant by virtue of the co-conspirator rule. This will be the case even when the statement does not involve the defendant at all, and does not concern any events of which he or she may be aware; the conspiracy with which the defendant is charged may—and in a RICO conspiracy such as this instant one, will—extend well beyond those events concerning which the defendant has direct knowledge.

Revelation of these statements before trial would seem in almost every instance to be more important to a defendant than would be the defendant's own declarations, since presumably the defendant will remember most of what he or she has said and have no need for self-cross-examina-

tion on the meaning. As this court has previously noted:

> If a co-conspirator's statement is to be introduced into evidence against the defendant on the theory that it is the defendant's own statement, his own "admission," fairness dictates that under Rule 16(a) [the] defendant be allowed to discover this pre-arrest statement along with statements he himself uttered. There is much more need for the vicarious utterances of defendant than for his own declarations to be revealed since in many cases he will be unaware of the many statements allegedly made by his fellow conspirators. His counsel should be apprised of them, for often they will be quite damaging unless explained.

*United States v. Percevault*, 61 F.R.D. 338, 340 (E.D.N.Y.1973), *rev'd on other grounds*, 490 F.2d 126 (2d Cir.1974).

■ The primary reason for allowing conspirators' statements to be at least as readily discoverable as defendants' statements is that the surprise factor, which weighs so heavily in favor of disclosing defendants' statements, is even more pronounced where the defendant has never been aware of the statement. A defendant does not need merely to recall the co-conspirator's statement in order to rebut it or put it in context, as is the case with his or her own statements; instead, the defendant may be exposed to it for the very first time at trial, with very little hint of where or how to turn in rebuttal. The danger of false accusation is much greater with a conspirator's statement, for the defendant may be unaware of the statement itself, its exact context, its content, and the events to which it refers. Effective preparation for trial and cross-examination is difficult under those circumstances.

The difficulty of the defense in dealing with co-conspirator's statements was made clearer by the recent Supreme Court decision in *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). *Inadi* held that the Confrontation Clause does not require the prosecution to demonstrate the unavailability of a co-conspirator

as a condition of admitting an available declarant's statements. Without pre-trial discovery of such statements, the defendant may in effect be deprived of the opportunity to subpoena an available declarant for special "cross-examination" under Rule 806 of the Federal Rules of Evidence. Even if the declarant might have been available to the government, often the subpoena will be ineffectual during trial. Yet "the right of an accused to have compulsory process for obtaining witnesses in his favor guaranteed ... by the Sixth Amendment, is ... a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1973, 18 L.Ed.2d 1019 (1967).

The potential problems posed by Rule 801(d)(2)(E) are particularly acute for the defendant who has but a minor role in the conspiracy. The statement will not only be disproportionately prejudicial relative to that defendant's part of the conspiracy; the defendant will also be much less familiar with all of the various details and lacunae of the complex conspiracy, will be much less likely to know prior to trial of the statements or their contents, will not have the knowledge of how they would be best rebutted, and will not have the resources or access to witnesses normally enjoyed by the "higher-ups." *See United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 1134, 89 L.Ed.2d 390 (1986) (Marshall, J., dissenting).

The person who may be most injured by this denial of effective cross-examination is the innocent defendant. He or she is likely to have no knowledge of the statement, the events that it describes, or the conspiracy as a whole. The innocent defendant has virtually no access to rebuttal witnesses, and often would not know where to start looking.

To make matters worse, conspirators' statements admitted under 801(d)(2)(E) are often among the most damaging, yet least reliable, evidence offered at trial. This is especially the case where the declarant is not present in court. As Justice Marshall has noted:

[T]he differences between an accomplice's conspiratorial utterances and his testimony in court are not merely those of diction and demeanor. That a statement was truly made "in furtherance" of a conspiracy cannot possibly be a guarantee, or even an indicium, of its reliability.

. . . . .

The unreliability of co-conspirator declarations as trial evidence is not merely a product of the duplicity with which criminals often conduct their business. It also stems from the ambiguities that so often appear in all casual conversations, not just those of outlaws. ... And the difficulties one has in making sense of slang and dialect can be compounded where conspirators use private codes. ... Because of these problems, trained case agents are often hard pressed to piece together the facts of a criminal conspiracy from the confused tangle of conversations they have intercepted.

*United States v. Inadi, supra,* 106 S.Ct. at 1131–32 (Marshall, J., dissenting) (citations omitted). *See also United States v. Roberts,* 793 F.2d 580, 585 (4th Cir.1986) (co-conspirator declarations are "frequently infected with a degree of duplicity and mendacity concealed as well from the Government as from others"), *rev'd,* 811 F.2d 257 (4th Cir.1987) (in banc).

Pretrial disclosure of conspirators' declarations which the government plans to introduce at trial as the defendants' own would substantially temper the possibility of unfair prejudice. The defendants will have more time to build a rebuttal case, to subpoena witnesses, and to move the court to suppress the statements as prejudicial or untrustworthy under Rule 403 of the Federal Rules of Evidence. The opportunity for *in limine* rulings would save substantial time and would reduce confusion and chance of error at the trial.

Even if statements are eventually rebutted at the trial, defendants may be unfairly prejudiced merely by the announcement of the statements. Rebuttal may come only after the lengthy contin-uances necessary to respond to "ambush attack." Rule 806 applications to impeach the declarant will usually take place only if the declarant is available, and then only well after the statement has been exposed to the jury and seeped into the jury's subconscious. Pretial discovery of 801(d)(2)(E) statements allows the defendants time to assess the veracity of the declarations, and to make arrangements to lessen their prejudicial effect or to have them excluded altogether.

Early revelation will also assist the court in avoiding later exclusion of co-conspirators' statements pursuant to Rule 403 of the Federal Rules of Evidence. The need for trial continuances where "surprising" evidence is offered constitutes one of the criteria—"undue delay"—for exclusion of relevant evidence under Rule 403, and must also be considered when weighing probative force and the cumulative nature of the government's proof. *Cf. United States v. Bari,* 750 F.2d 1169, 1178–79 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

The government is not unfairly disadvantaged by such disclosure; those statements which are accurate and properly attributable to the defendant will be admissible. If there is danger of threats to prospective witnesses, the court will condition a Rule 16 order to limit discovery or otherwise protect against taint. In this district, where it is usual for the government to open its files to defense counsel, we have found no increase in perjury or witness tampering as a result of free disclosure. The benefit of reduced trial time and earlier pleas, moreover, has been substantial.

There is thus "sufficient textual and practical interrelation" between the criminal and evidentiary rules generally, and between Rules 16(a)(1)(A) and 801(d)(2)(E) in particular, that they should be harmonized by construing them *in pari materia. See United States v. Roberts,* 793 F.2d 580, 584 (4th Cir.1986), *rev'd,* 811 F.2d 257 (4th Cir. 1987) (in banc); *see also id.* at 5 (Phillips, J., strongly dissenting from in banc reversal).

The government contends, nevertheless, that such an *in pari materia* construction is directly barred by the Second Circuit decision in *United States v. Percevault*, 490 F.2d 126 (2d Cir.1974). In that case, the Court of Appeals ruled that co-conspirators' statements were not discoverable where the declarants were prospective government witnesses.

That ruling should be reconsidered in light of *Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), and the novel problems of complex *RICO* cases. But whether *Percevault* is or is not reconsidered does not affect the rules to be applied to the case at bar.

It should be noted that at least part of the rationale of *Percevault* apparently was based on the fact that Rule 801 of the Federal Rule of Evidence was then merely a proposed rule restating case law, whereas the Jencks Act had the stronger force of a statute. *See id.* at 130 & n. 9. The Court of Appeals specifically noted that the then-proposed rules were "not operative." *Id.* Nevertheless, Congress thoroughly debated the Rules of Evidence, adopting them by statute rather than, as in the case of other rules, by inaction. Pub.L. 93–12, March 30, 1973. Thus the Rules of Evidence, which are now operative, are in no way inferior to statutes or the Federal Rules of Criminal Procedure—all three authorities must be considered as equally necessary to the integrated scheme of criminal justice and *in pari materia*.

At various points the *Percevault* opinion seemed to suggest by dictum that Rule 16(a) simply did not cover co-conspirators' declarations. The basis of the holding was, however, much narrower; namely, that the Jencks Act, 18 U.S.C. § 3500, bars discovery of co-conspirators' statements where those conspirators are prospective witnesses. The government in *Percevault* had in effect conceded that the ruling should be narrower than the dicta, for it had already disclosed to the defendants those statements made by conspirators who were not to be called as witnesses; it relied only on the Jencks Act for its contention that the declarations of prospective witnesses were not discoverable. 490 F.2d at 128. As *Percevault* itself noted, *"Since the only statements in issue here are clearly those of prospective witnesses* and are accordingly within the scope of 18 U.S.C. § 3500(a), the district court did not have the statutory authority to compel disclosure ... prior to trial." *Id.* at 129 (emphasis added) (footnote omitted). *See also id.* at 131 (although district judge may "encourage disclosure of statements made by co-conspirators *who are potential witnesses,* Rule 16(a) simply does not encompass these statements" (emphasis added)). The focus of the court's examination of the conjunction of Rule 16(a) and Rule 801(d)(2)(E) was whether such an *in pari materia* reading superceded the strictures of the Jencks Act, not whether such a conjunction was itself implausible or impermissible. *See, e.g., id.* at 130 n. 9.

It is not surprising, therefore, that cases subsequent to *Percevault* have readily accepted the extension of Rule 16(a) to co-conspirators' statements. *Percevault* has consistently been read, in this and other circuits, as denying discovery only on the basis of section 3500, and thus only where the *declarant* is a prospective witness. *United States v. Nakashian*, 635 F.Supp. 761, 773 (S.D.N.Y.1986); *United States v. Payden*, 613 F.Supp. 800, 820 (S.D.N.Y. 1985); *United States v. DeFabritus*, 605 F.Supp. 1538, 1548 (S.D.N.Y.1985); *United States v. Konefal*, 566 F.Supp. 698, 706 (N.D.N.Y.1983) (where co-conspirators will not be witnesses, "strict adherence to the rule in *Percevault* is not required"); *United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978), *aff'd*, 623 F.2d 769 (2d Cir. 1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Roberts*, 793 F.2d 580, 583–84 & n. 5 (4th Cir.1986), *rev'd*, 811 F.2d 257 (4th Cir.1987) (in banc); *United States v. Williams*, 113 F.R.D. 177, 180 (M.D.Fla.) (1986); *United States v. Brighton Bldg. & Maintenance Co.*, 435 F.Supp. 222, 233 & n. 20 (N.D.Ill. 1977), *aff'd*, 598 F.2d 1101 (7th Cir.1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79–80, 62 L.Ed.2d 52 (1979); *United States v. Fine*, 413 F.Supp. 740, 743 (W.D.Wisc.1976); *United States v. Bloom*, 78 F.R.D. 591, 618 (E.D.Pa.1977).

■ In view of this history, *Percevault* must be construed to apply only to co-conspirators who are prospective witnesses. In this one instance, where the witness and the declarant of the disputed statements are one and the same person, the Jencks Act has been construed to permit pretrial withholding. But that is the sole basis for denying the extension of Rule 16(a), and thus *non-witness* co-conspirators' statements should be disclosed to defendants whenever the government intends to use such declarations at trial as admissions attributable to the defendants.

Pretrial discovery of these co-conspirator statements may be limited in three ways. First, they may be withheld under the Jencks Act if the co-conspirator declarant is a prospective witness. *Percevault, supra.* The defendants in this case have not asked for such witness statements.

Second, declarations must only be disclosed if they are in fact to be offered as 801(d)(2)(E) evidence. In particular, this covers only those declarations made "during the course and in furtherance of the conspiracy."

Third, co-conspirators' declarations are to be discoverable only to the extent that such statements would be discoverable were they the defendants' own. As the preceding discussion makes clear, this includes all statements memorialized by the government which the government plans to offer at trial, regardless of the circumstances of that memorialization.

*Security of Witnesses*

It is often claimed that the principal rationale for withholding the sorts of statements requested here until after direct examination is that the security of witnesses might be threatened if the defendants know in advance that the witnesses will testify for the prosecution. *See, e.g. United States v. Roberts,* 811 F.2d 257, 258–9 (4th Cir.1987) (in banc). Disclosing defendants' and co-conspirators' statements will, it is argued, implicitly reveal the identities of witnesses. This will in turn encourage threats and bribery. It has been claimed, without foundation, that such security concerns prompted the Jencks Act. *See, e.g.,*

*United States v. Walk,* 533 F.2d 417, 419 (9th Cir.1975); *United States v. Feinberg,* 502 F.2d 1180, 1182 (7th Cir.1974); *United States v. Dorfman,* 53 F.R.D. 477, 479 (S.D.N.Y.1971). This contention does not seem to be substantiated by the legislative history. But even if the Jencks Act does reflect an implicit security concern, those fears are largely unfounded, even in a case such as this one, where the defendants are allegedly part of an organized crime syndicate. Where there is a specific basis for them, *in camera* and other proceedings afford protection. The court will not require discovery where it will endanger a witness. Yet it should not deny discovery because in some other matter to do so might be dangerous.

■ It often will be possible to disclose defendants' or co-conspirators' statements without divulging the identity of the witness in whose statement those declarations are embodied. The statements may be revealed without the contextual information that would reveal witness identity. Under appropriate circumstances, only the statement and the approximate date of the declaration need be disclosed.

"Statements within statements" can be excised from the underlying statement without serious security implications. *See United States v. Villa,* 370 F.Supp. 515, 520 (D.Conn.1974). There are several reported cases where such limited disclosure has been successfully accomplished. *See, e.g., id.; United States v. Garrett,* 305 F.Supp. 267, 268 (S.D.N.Y.1969); *United States v. Curry,* 278 F.Supp. 508, 514 (N.D. Ill.1967).

All of these modified versions of disclosure can be ordered by the court under Rule 16(d)(1). Courts are empowered to limit, condition or absolutely prohibit disclosure of otherwise mandated Rule 16 discovery for any compelling reason, including witness security. In those cases where effective excision of defendants' statements from Jencks Act statements is in fact impracticable or dangerous, the government can move for a 16(d)(1) exception or modification. "By this means the courts may effectively guard against any

'incidental contravention of the Jencks Act,' a consequence posited as an inevitable and invariable one in the Government's argument." *United States v. Roberts,* 793 F.2d 580, 587 (4th Cir.1986), *rev'd,* 811 F.2d 257 (4th Cir.1987) (in banc).

It should be pointed out, however, that the defendants in the instant case are already aware of the identities of many of the prospective witnesses. Several of the witnesses have already testified in related cases, and others are named by the government in its brief to the court in response to the defendants' pretrial motions.

### Broad Discovery Encouraged

Broadened discovery in criminal cases should be encouraged whenever possible, particularly where fairness and efficiency are so severely handicapped by the scope, length, and complexity of labyrinthian RICO cases. Experience here and abroad undermines the claim that more extensive pretrial disclosure would be unwieldy or prejudicial to the government. *See, e.g.,* Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L.J. 1149, 1183 n. 112 (1960) (successful British experience with full disclosure in criminal cases); Oliver, *Omnibus Pretrial Proceedings: A Review of the Experience of the United States District Court for the Western District of Missouri,* 58 F.R.D. 270, 272 (1972) ("procedures which have been followed in England for a long, long time are not harmful but exceedingly helpful to prosecution"). On the merits of expanded discovery through an "omnibus hearing," see: Manual for Complex Litigation, Second, § 32.24 (1985); Clark, *The Omnibus Hearing in State and Federal Courts,* 59 Corn.L.Q. 761, 765 (1975); Oliver, *Omnibus Pretrial Proceedings, supra. Cf. United States v. Sclamo,* 578 F.2d 888, 890 n. 1 (1st Cir.1978) (government should avail itself of opportunity for omnibus procedure to promote fairness and judicial efficiency). On the benefits of expanded discovery practice in criminal cases generally, see also, e.g.: Manual for Complex Litigation, Second, § 32.24 (1985) ("in many districts the prosecution has found that its interests are best served by adopting an 'open file' policy in most criminal cases"); American Bar Association, Standards for Criminal Justice, ch. 11, at 7 (Supp.1986) (Standard 11–1.1, proposing that expeditious and fair trial be promoted through "full and free discovery"); Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth?,* 1963 Wash.U. L.Q. 279; Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L.J. 1149 (1960).

Even if expanded discovery were of debatable value in basic, everyday criminal cases, it is essential in unwieldy RICO cases such as the instant one. The administration of these complex cases has become too convoluted for counsel or the court adequately to control without a full understanding of the evidence before it unfolds at the trial. The court has already been inundated with some 40 defense motions in this case. Fair treatment of these motions can only be made with a detailed understanding of how the government plans to prove its case.

Precision, accuracy, and fairness suffer under a system of "trial by ambush." Minor players and innocents can be caught up in the grander scheme, even if there is not sufficient evidence to implicate them in a separate, more focused trial. Meanwhile, the court is unable intelligently to control the proceedings.

### Conclusion

In accordance with *Percevault,* and pursuant to Rule 16, Rule 801, and the court's inherent power to require appropriate discovery, the government is required to produce all statements made by defendants and co-conspirators that the government plans to offer at trial as admissions of a defendant, with the following two exceptions. The government is encouraged, but not required, to disclose any statements made by co-conspirators who are prospective witnesses. The government is also not required to disclose statements made by co-conspirators which were not made during the course and in furtherance of the conspiracy. The government is only

required to turn over those statements which have been memorialized in one form or another. The government may make such 16(d)(1) withholding or modification motions as it deems necessary.

So ordered.